*In re* MARRIAGE OF STEVEN HASKELL EVANS, Petitioner-Appellee, v. DONNETTA SUE EVANS, Respondent-Appellant.

Fourth District No. 4—91—0884

Opinion filed June 19, 1992.

Peggy Patty, of Land of Lincoln Legal Assistance Foundation, Inc., of Mattoon, for appellant.

James W. Dieker and Catherine H. Barbercheck, both of Lawrence E. Johnson & Associates, P.C., of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:
Respondent Donnetta Sue Evans appeals from an order of the circuit court of Douglas County, awarding joint custody of the minor child of respondent and petitioner Steven Haskell Evans to petitioner and respondent. The circuit court characterized its order as a temporary order. However, because of the special problems in regard to opportunity to appeal which can arise from custody orders as here limited as to time but otherwise appealable under Supreme Court Rule 301 (134 Ill. 2d R. 301), we treat this order as appealable under that rule. (See *In re Marriage of Cesaretti* (1990), 203 Ill. App. 3d 347, 351-52, 561 N.E.2d 306, 308-09.) We note that, in any event, the order would be subject to appeal to this court upon our grant of leave to do so (134 Ill. 2d R. 306(a)(1)(v)) and, if requested, we would have granted such leave here. See *In re Custody of Purdy* (1986), 112 Ill. 2d 1, 4, 490 N.E.2d 1278, 1279.

The issue before this court is whether a joint custody order made on the court's own motion was against the manifest weight of the evidence. We reverse and remand with directions to award custody of the child to respondent.

FACTS

Petitioner was born on October 10, 1962, graduated from high school, and moved with his family from Tennessee to Illinois in 1980. Respondent was born July 8, 1960. She did not graduate from high school, but eventually obtained her general equivalency diploma (GED). The two met in June 1980. Petitioner joined the United States Army (Army) in September 1980, and the couple were married on December 12, 1980. The only child of the marriage, a son, was born in Germany on May 28, 1982. In May 1983, after returning from the military assignment in Germany to an assignment in Georgia, respondent left petitioner, taking the child, and returned to Illinois. Petitioner was discharged from the Army on February 24, 1984.

Petitioner obtained a dissolution of marriage judgment in Tennessee on December 14, 1987. This judgment, while dissolving the marriage, did not provide for custody or child support. No child support

was paid by petitioner after the December 1987 judgment. On October 15, 1990, upon petitioner's motion, the Tennessee judgment was registered in Douglas County, Illinois, and petitioner filed a petition seeking custody of the child of the parties.

## The Child

The child, now 10 years of age, is mentally handicapped. He attends special classes for trainably mentally handicapped (TMH) children. Educable mentally handicapped (EMH) is a somewhat higher level than TMH children. There was evidence that his IQ level is between 35 and 55. He can communicate orally, is initially shy around people, is hyperactive, and has a short attention span. In the words of his maternal grandmother, he is a loving and special child. In September 1991, the time of the trial court's hearing on the petition for custody, the child had not seen his father for six years.

## Petitioner

Evidence was introduced regarding petitioner's excessive use of alcohol and drugs during his military tenure. Respondent testified of abuse to her and stated she left with the child in 1983 when petitioner abused the child. After leaving the Army, petitioner had various jobs and, based upon a Uniform Reciprocal Enforcement of Support Act action, paid $25 per week in child support payments until the 1987 dissolution order.

Petitioner married Sally Gregory on November 11, 1989, and they live in Tennessee. Sally was born January 13, 1955. She has a daughter (now 13 years of age) and a son (now 9 years of age) by her previous husband. She testified that one of her conditions for the marriage was no alcohol or drug use. Sally works in a hospital emergency room in the early evening hours and earns $217 every two weeks.

Evidence indicates that petitioner cares for his stepchildren. Along with his new family, he is very active in the Church of Christ. He no longer uses alcohol or any type of drugs, and he wants to be a minister in his own church. He and Sally have purchased a new 1,500-square-foot house. He is employed as a welding supervisor, with a gross weekly income of $471.

## Respondent

In 1983, Donnetta Evans returned to Villa Grove, Illinois, with her son. She resided with her mother and three sisters, in her mother's home, until moving to an apartment and then to a trailer in 1991. Her main support has been public assistance and waitress work. She

completed her GED and eventually enrolled in Parkland Junior College. Her first year at Parkland involved studies relating to the travel agent business. Then, upon advice from her college counselor, she switched to secretarial training. She has a semester's work left before finishing the secretarial education training.

Respondent has had the principal responsibility for raising her son since May 1983 and has actively sought medical help and special educational assistance for the boy. There is no evidence of anything but a caring and loving relationship between mother and son. Actually, the record does not indicate antagonism toward petitioner, but does indicate the mother's fear of losing her son.

## TRIAL COURT ORDER

Petitioner requested custody of the son, suggesting that he can provide the necessary male image and will obtain evaluations from top doctors at Vanderbilt University Medical School. He suggests his home is adequate and his stepchildren will provide friendship.

Respondent argued that the child does not know petitioner and any visitation will be emotionally disturbing. She points out that she has raised the child in a loving and caring environment.

At the end of the September 1991 hearing, the trial judge emphasized that the past must be disregarded and the future should include a relationship between child and father. The written order filed November 1, 1991, was termed a temporary judgment order and "awarded temporary joint custody of the minor child" to the parties "with Respondent being the residential parent." Specific visitation was provided, including some visitation in Tennessee at petitioner's expense. Child support was ordered of petitioner in the amount of $65 per week. Other provisions relevant to the welfare of the child were included, and the order provided for a court review in May 1992.

## JOINT CUSTODY ISSUE

Joint custody was not mentioned in this case until the judge's decision. Joint custody was not available on a judge's own motion until January 1, 1986, at which time the present provision became effective. Section 602.1 of the Illinois Marriage and Dissolution of Marriage Act (Act) now provides, in relevant part:

"(b) Upon the application of either or both parents, or upon its own motion, the court shall consider an award of joint custody. Joint custody means custody determined pursuant to a Joint Parenting Agreement or a Joint Parenting Order. ***

(c) The court may enter an order of joint custody if it determines that joint custody would be in the best interests of the child, taking into account the following:

(1) the ability of the parents to cooperate effectively and consistently with each other towards the best interest of the child;

(2) [t]he residential circumstances of each parent; and

(3) all other factors which may be relevant to the best interest of the child.

(d) Nothing within this section shall imply or presume that joint custody shall necessarily mean equal parenting time. The physical residence of the child in joint custodial situations shall be determined by:

(1) express agreement of the parties; or

(2) order of the court under the appropriate circumstances listed herein." Ill. Rev. Stat. 1991, ch. 40, pars. 602.1(b), (c), (d).

Custody is determined in accordance with the best interest of the child and all relevant factors shall be considered, including those specifically listed in section 602 of the Act. Sections 602(a)(3), (a)(4), and (a)(5) of the Act provide:

"(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved." Ill. Rev. Stat. 1991, ch. 40, pars. 602(a)(3), (a)(4), (a)(5).

There is a dearth of case law interpreting and indicating the application of the current section 602.1 of the Act as it applies to court's acting on its own motion. However, we conclude the present fact situation clearly requires a determination that the trial court's use of joint custody was an abuse of discretion.

The minor child in this case is a special child. Special schools are necessary and special care and training is required. The respondent has illustrated her responsibility by assuring the needs of the child are addressed. She has done this with the help of her family and State aid. Insignificant assistance has been received from the father. While the petitioner suggests he was deterred by respondent from assisting, such is contrary to all of the evidence. He was the one who failed to make contact for six years and, before that, made minimum contacts.

Traveling by automobile, petitioner lives approximately six hours from respondent's home. The son has been raised among his mother's family in Douglas County since he was one year old. There is no admissible evidence in the court file which indicates anything other than respondent being a caring and competent parent. Sole custody should have been awarded to respondent mother.

## VISITATION

In reading comments made by the court, it becomes apparent that the court's joint custody order intervention was to encourage cooperation between petitioner and respondent and phase in visitation so as to avoid undue hardship for the child. The court emphasizes the value of the relationship between father and son. It was suggested that the unpleasantness of the early 1980's should be treated as ancient history.

Section 607(a) of the Act provides in part:

"Visitation. (a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." Ill. Rev. Stat. 1991, ch. 40, par. 607(a).

■ The evidence does not justify prohibiting petitioner's visitation. As indicated, because of the long separation and the "special child" status, great care was needed to implement the father's reconciliation with his son. The structured initial visitation is evidence of the trial judge's concern for this child. We commend the trial judge for his concern. Nothing in this opinion should be considered criticism or reversal of visitation provisions previously ordered by the trial court. In entering future visitation orders, we direct the trial court's attention to *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 131, 416 N.E.2d 785, 790, where the appellate court affirmed a finding that eight consecutive weeks of summer visitation would prove traumatic to the children and was not in their best interests. See also *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 264, 547 N.E.2d 590, 598.

The order of joint custody is reversed, and this cause is remanded with directions to enter an order granting sole custody of the child to respondent. The trial court's orders as to visitation entered prior to the time of this appeal are affirmed.

Reversed and remanded with directions.

GREEN, P.J., and COOK, J., concur.