*In re* MARRIAGE OF TINA MARIE DOBEY, Petitioner-Appellee, and MATTHEW L. DOBEY, Respondent-Appellant.

Fourth District    No. 4—93—0468

Argued December 15, 1993.—Opinion filed February 18, 1994.

KNECHT, J., specially concurring.

Thomas K. Leeper (argued), of Leeper, Farha & Erwin, P.C., of Quincy, for appellant.

Andrew C. Schnack III and Devin Cashman (argued), both of Schnack, Schnack & Cashman, of Quincy, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1993, petitioner, Tina Marie Dobey, and respondent, Matthew L. Dobey, were granted a dissolution of marriage. The parties stipulated to all matters regarding the dissolution except child support, custody, and visitation. The trial court awarded Tina custody of the child, ordered Matt to pay $70 per week in child support, and established a visitation schedule for Matt pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 101 *et seq.*). Matt appeals the custody award and the visitation schedule. We affirm the custody award, but reverse and remand the visitation order for further proceedings consistent with the interim order we entered from the bench following oral arguments. That order expanded Matt's visitation to include the

weekday hours when Tina is working and Matt is available to care for their child.

## I. BACKGROUND

Tina initiated divorce proceedings against Matt in August 1992. Tina sought legal custody of their only child, Tyler Dobey, born November 27, 1991. She also filed a petition for temporary custody and support. After an initial hearing, the trial court awarded temporary joint custody, giving Tina physical custody while Matt was out of town due to his work, approximately 40 continuous days every two months; the court awarded Matt physical custody while home from work, approximately 20 continuous days every two months. This joint-custody arrangement continued for seven months until March 1993 when the court entered its final judgment of dissolution of marriage following a hearing on the issues of custody and visitation.

Matt worked as a trainee engineer for American Commercial Barge Line, where he had worked for 10 years at the time of the custody hearing. Because he travels throughout the Midwest rivers, he must live on the barges while at work. His typical schedule consists of 40 continuous days on the barge and then 20 continuous days at home, every two months, but may vary somewhat because he does not control his schedule. Because one engineer must always be on board the barge, Matt is also dependent on the arrival of a relief engineer.

Tina works a typical 40-hour week at Micro Manufacturing plant in Quincy. Tyler stays at a baby-sitter's residence while she is at work.

Matt sought joint custody of Tyler after realizing that his schedule would not allow him to have sole custody. In preparation, Matt promptly completed the court's Children First program; Tina also completed the program. Upon the parties' separation, Matt rented a two-bedroom trailer and purchased formula, diapers, wipes, clothing, and a baby bed for Tyler. Prior to the separation and during the temporary joint-custody arrangement, Matt was involved in all aspects of Tyler's care, including feeding, changing diapers, bathing, and giving medication. In caring for Tyler, Matt attempted to follow a written schedule provided by Tina for his feeding, napping, and bed times. Matt stated that one of the reasons he sought joint custody was to give his son a strong father-son relationship; Matt had not known his own father.

Tina sought sole custody because she believed that she and Matt could not get along and that his being away on the job would make

difficult coordinating joint care of Tyler. Tina made no allegations that Matt was an unfit parent, although she expressed concern about Matt's drinking alcohol around Tyler. Although Tina disfavored joint custody because of the parties' inability to communicate, she found acceptable allowing visitation during the weekdays while she was at work and Matt was at home.

The trial court awarded Tina sole custody of Tyler. Matt received visitation from 6 p.m. on Friday to 6 p.m. on Sunday during the weekends he was home, plus certain holidays, and four weeks' summer vacation. Matt filed a motion for reconsideration of the joint custody and visitation rulings, which the court denied. This appeal followed.

## II. CUSTODY

Matt first argues that the trial court erred in awarding Tina sole custody of Tyler. Matt contends that the trial court should have awarded joint custody, with essentially the same terms as the temporary joint-custody award.

In determining custody, the trial court should consider all relevant factors, including those listed in section 602 of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 602), and decide what custodial order serves the best interest of the child. The court has broad discretion in making this determination, and this court will afford great deference to the trial court's determination in recognition of that court's far superior position for evaluating the parents, child, and all other evidence. Accordingly, this court will not disturb the trial court's ruling on appeal unless it is against the manifest weight of the evidence or the trial court abused its discretion. *In re Marriage of Lee* (1993), 246 Ill. App. 3d 628, 641, 615 N.E.2d 1314, 1324; *In re Marriage of Evans* (1992), 229 Ill. App. 3d 932, 936, 595 N.E.2d 237, 240.

In *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 263, 547 N.E.2d 590, 598, this court reversed a joint-custody award as manifestly an abuse of discretion where the parties were hostile and uncooperative. In *Bush*, this court also noted the absence of a joint-parenting agreement, as described by section 602.1 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 602.1). *Bush*, 191 Ill. App. 3d at 262-63, 547 N.E.2d at 597-98.

■ In this case, the trial court specifically found that (1) the parties had not entered any joint-parenting agreement, (2) the parties had not shown an ability to cooperate effectively and consistently with each other for the best interest of Tyler, and (3) Matt's employment required him to be out of town for 40 consecutive days. The court then awarded Tina sole custody.

The trial court's main concern must be the well-being of the child, and placing the child continuously between two uncooperative parents cannot be in the child's best interest. In this case, where ample evidence exists that the parents had not shown an ability to cooperate, the trial court did not abuse its discretion in awarding Tina sole custody of Tyler, nor was its finding against the manifest weight of the evidence. We add that we view joint custody as most extraordinary and counsel skepticism when trial courts hear promises from newly divorcing parents that they can surmount the manifest difficulties of a joint-custody order.

## III. VISITATION

We next review the trial court's visitation order. The trial court gave Matt visitation from 6 p.m. Friday to 6 p.m. Sunday on the weekends he was home from work, certain holidays, and two two-week periods during the summer. Matt argues that this visitation schedule is inadequate and does not fit the specific, unusual circumstances of this case. Tina maintains that the visitation schedule is appropriate.

Courts favor liberal visitation for the noncustodial parent because the child is entitled to a healthy, close relationship with both parents. (*Hock v. Hock* (1977), 50 Ill. App. 3d 583, 584, 365 N.E.2d 1025, 1027.) According to section 607 of the Act, the trial court should grant reasonable visitation unless it finds visitation would seriously endanger the child's physical, mental, moral, or emotional health. (Ill. Rev. Stat. 1991, ch. 40, par. 607.) The court has broad discretion in determining visitation rights of the noncustodial parent, with the best interest of the child being the primary concern. This court will not reverse a trial court's rulings regarding visitation absent a finding that the ordered visitation is manifestly unjust. *In re Marriage of Diehl* (1991), 221 Ill. App. 3d 410, 424, 582 N.E.2d 281, 290.

When a court designates one parent as the custodial parent, that designation does not and should not deprive the noncustodial parent of all rights and privileges as a parent. As section 602(c) of the Act provides, "[t]he court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child." (Ill. Rev. Stat. 1991, ch. 40, par. 602(c).) Further, the custodial parent has the duty to strengthen and nurture in every way possible the relationship between the children and their noncustodial parent. This requires, at a minimum, that the custodial parent refrain from speaking ill of the noncustodial parent to the children, and keep others from doing so as well. The trial court should

enforce this obligation by explicitly telling the custodial parent about it and further informing the custodial parent that if he or she is unwilling or unable to meet it, then the court stands fully prepared to change the custody order and grant custody of the children to the noncustodial parent to see if that parent could do a better job of meeting this obligation.

■ Although the trial court's visitation schedule contains typical provisions, we hold that the result in this case is manifestly unjust due to the unusual circumstances involved. The situation here is unique because of Matt's work cycle. In a two-month period, he is home only 20 days, but during those 20 days, he is available the entire day. Because Tina works a regular 40-hour workweek, Tyler stays with a baby-sitter for more than eight hours every day of every week. At a minimum, Matt sought visitation with Tyler during those days when he was home from work and available essentially to serve as Tyler's "baby-sitter." In considering Matt's request, we note that the trial court did not find that visitation with Matt would be detrimental to Tyler.

Allowing Matt daytime visitation in place of Tyler's baby-sitter during the weeks he is home takes into account Tina's concerns about joint custody, while giving Matt the more continuous presence he seeks in Tyler's life. Because Tina was awarded sole custody, she is essentially in charge of Tyler. However, by allowing Matt to serve as Tyler's "baby-sitter" when he is available, Matt can still be a significant part of Tyler's life even though he does not have custody.

Although it is highly unusual to reverse such a typical visitation order, in the specific circumstances of this case, we conclude that the visitation schedule (1) is not reasonable, and (2) results in a manifest injustice to both parents and the child. In conclusion, we fail to see how one could reasonably argue that Tyler's interests are better served by having a baby-sitter care for him 40 hours a week, instead of his father, while Tina is at work.

## IV. CONCLUSION

We affirm the award of sole custody of Tyler to Tina. However, we reverse the visitation order and remand for further proceedings consistent with the interim order entered by this court on December 15, 1993, and the views expressed herein.

Affirmed in part; reversed in part and remanded.

GREEN, J., concurs.

JUSTICE KNECHT, specially concurring:

I agree with the result and analysis in this case but disavow the majority's view of joint custody as extraordinary. The majority counsels trial courts to be skeptical when divorcing parents promise they can surmount the manifest difficulties of a joint-custody order. What are these manifest difficulties, and why must the parents of children be suspect in their promises?

Any custody-visitation order can present problems if parents do not cooperate. Joint custody, when it is well and mutually planned, means joint responsibility, not shared physical custody. Joint custody is simply a tool or a plan to maximize the involvement of both parents in the life of a child. If the tool is used improperly or the plan imposed in an inappropriate case, problems arise. Divorcing parents are not likely to be dewy-eyed optimists about child rearing. If they believe shared responsibility will have advantages and can fashion a sensible joint-parenting agreement, then their promises should be viewed with an open mind, not skepticism.

This case was not appropriate for joint custody. I have chosen to specially concur because the majority's comment on joint custody might mislead trial courts, parents and their counsel into believing joint-custody orders are viewed with some special degree of scrutiny on review. There is no authority for any special scrutiny. The standard of review does not change simply because a trial court enters a joint-custody order.