*In re* MARRIAGE OF CRYSTAL K. FIELDS, Petitioner-Appellant, and RICHARD ALLEN FIELDS, Respondent-Appellee.

Fourth District   No. 4—96—0166

Argued September 18, 1996.—Opinion filed October 3, 1996.

Laurie Mikva (argued), of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellant.

John D. McFetridge (argued), of Manion, Devens & McFetridge, Ltd., of Danville, and Paul T. Manion, of Manion, Devens & McFetridge, Ltd., of Hoopeston, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1995, petitioner, Crystal K. Fields, filed a petition for dissolution of her marriage with respondent, Richard Allen Fields. In March 1995, Richard filed a petition requesting temporary visitation with the parties' two children, M.F. and A.F. Crystal subsequently filed a petition requesting temporary custody and support of the children. In May 1995, pursuant to an agreement reached by Crystal and Richard during a hearing on the petitions, the trial court entered a temporary order granting custody of the children to Crystal and visitation privileges to Richard, subject to certain restrictions. In October 1995, a successor judge conducted a final hearing on dissolution and all other pending issues, including visitation. The court subsequently entered an order dissolving Crystal's and Richard's marriage and granting Richard reasonable visitation with both children, without restrictions or required counseling.

Crystal appeals, arguing that the trial court erred by (1)

determining that the original court's decision in the temporary relief hearing was *res judicata* and refusing to allow evidence that was or could have been introduced at the prior hearing; (2) allocating more than half of the marital debts to Crystal; (3) placing the burden on her to show that restricted visitation should be continued as provided by the temporary order; (4) determining that M.F.'s counselor could not testify as an expert and denying the introduction of the counseling center's billing records; and (5) failing to apply the proper standard when it refused to order counseling. We affirm all portions of the judgment except with regard to the visitation order; because we agree with Crystal's first argument, we reverse and remand for a *de novo* hearing on the issue of visitation.

## I. BACKGROUND

Crystal and Richard married in September 1991. Two children were born to them, M.F., born in November 1989, and A.F., born in July 1994.

The parties separated in June 1994, and the children remained with Crystal. After the separation, Richard visited M.F. and A.F. on a regular basis. In November 1994, Crystal began requiring Richard's visits to be supervised because she believed that Richard was sexually abusing M.F. In January 1995, Crystal filed a petition for dissolution of the marriage. In March 1995, Richard filed a petition requesting temporary reasonable visitation with M.F. and A.F. Crystal subsequently filed a petition requesting temporary custody and support of their children.

During April and May 1995, the original trial judge, Judge Borbely, conducted a partial hearing on the petitions for temporary support, custody, and visitation. Because the parties are familiar with the evidence, we review it only to the extent necessary to put Crystal's arguments in context. Linda Jacques, an investigator for the Department of Children and Family Services (DCFS), testified that in November 1994 and January 1995 she investigated two allegations that M.F. had been sexually abused. Jacques determined that the initial report of abuse was unfounded. After conducting an investigation of the second report of abuse, including interviews with M.F., Richard, and Dr. Frank Stephens, a pediatrician who examined M.F. in December 1994, Jacques determined that the report was indicated for sexual penetration of M.F. by Richard.

The trial court also allowed into evidence Dr. Stephens' evidence deposition, in which he testified that Crystal brought M.F. for an examination in December 1994. During that examination, Crystal reported that M.F. exhibited vaginal and rectal redness, wet her bed

five or six times a week, masturbated frequently, and had experienced an episode of unexplained vaginal bleeding around November 1994. Crystal also told Dr. Stephens that she suspected sexual abuse. Dr. Stephens determined that, based upon the history provided by Crystal and the physical examination, M.F. had been sexually abused. On cross-examination, Dr. Stephens testified that Crystal had told him that the initial report of abuse to DCFS resulted in an indicated report. Dr. Stephens further stated that if the conclusions of the initial DCFS report were otherwise and if there had been no vaginal bleeding, he would be unable to conclude that sexual abuse had occurred, although he would still have concerns based solely on the physical examination.

Dr. Padmasharee Reddy, M.F.'s pediatrician, testified that she examined M.F. in November 1994 and found no physical evidence of abuse. Sarah Baron, Crystal's 12-year-old daughter from a previous marriage, testified that near the end of 1994, M.F. climbed on top of her and told her that M.F. and Richard "rub butts." Sarah also testified that she listened to a conversation between Richard and M.F. during which Richard told M.F. if she broke "the secret," Richard would go to prison.

Crystal testified that in November 1994 she first suspected that Richard may have abused M.F. because of M.F.'s statement to Sarah. Crystal denied telling Dr. Stephens that the initial DCFS report had resulted in an indicated finding. Crystal also stated that M.F. masturbates excessively, *is often angry, and displays violent behaviors.*

Richard testified and denied sexually abusing M.F. Richard also stated that he was fired from two jobs for sexual harassment, although he denied harassing the female co-workers. On cross-examination, Richard stated that prior to being fired the second time in 1994, he was accused by the co-worker of more than one incident of sexual harassment. Richard also stated that he was a heavy drinker prior to May 1993, and when he drank he was verbally abusive to Crystal.

On the third day of testimony, the trial court, the parties' attorneys, and the guardian *ad litem* met in chambers and discussed a settlement agreement. After that discussion took place, the court stated the following:

> "Mr. and Mrs. Fields, let me describe for you folks just exactly what has happened during the recess. ***
>
> When we began the recess and met in chambers, the subject of our discussion, first of all, was [Richard's attorney's] motion for the Court to conduct an interview in chambers with M.F. And in

the process of discussing that motion, our discussion evolved into what I would describe as a settlement conference. And I want the two of you to understand just exactly what my process and procedure is in conducting such a process. The best way I can describe it is this:

Each of your attorneys and [the guardian *ad litem*] will have an opportunity more or less informally to describe to the Court any additional evidence that they would have. They are all allowed to make any arguments that they want to make based on the evidence—assuming that everything comes out just the way they expected it would in the presentation of evidence. And then based on that I have attempted to give them some guidance as to where we might end up if things go just the way they anticipate. *** I have not ruled on these matters. But in conducting a settlement conference I do attempt to give the parties some guidance. ***

At the conclusion of all of that I understand [the attorneys] have met with [the] clients and that you have now been able to reach an agreement that will dispose of the temporary issues *** ."

The parties indicated to the court that they had reached an agreement. The court approved the agreement and stated the following:

"I don't think the record is sufficient to support a specific finding of abuse in this case. That doesn't mean that I don't have concerns. I do. *** [T]hat is the reason that this agreement contains a counseling component."

The trial court subsequently entered a written order reflecting the settlement reached during the temporary relief hearing. The court granted (1) Crystal temporary custody of M.F. and A.F., and (2) Richard "reasonable visitation privileges" with the children subject to certain terms and conditions, including that all visits had to be supervised by one of Richard's siblings or parents. The court also ordered both parties to seek counseling and to make the children available for counseling, and specifically noted that the order was "by its terms temporary."

In October 1995, a different judge, Judge Stipp, conducted the hearing on dissolution and all other pending issues, including visitation. Prior to hearing any evidence, the trial court ruled that it was bound by the findings of Judge Borbely at the temporary relief hearing, and it would not allow evidence that was or could have been introduced at that prior hearing—namely, evidence regarding any occurrence prior to May 26, 1995. The court allowed those portions of the transcript of the temporary relief hearing regarding Dr. Stephens' deposition and Jacques' testimony, but, only for the limited purpose of foundation. After hearing testimony and arguments, the

court granted the dissolution and reserved a ruling on the visitation issue. In December 1995, the court entered the judgment of dissolution, granted Crystal sole custody of M.F. and A.F., and granted Richard reasonable visitation without any restrictions or conditions.

## II. VISITATION

Crystal first argues that the successor trial judge, Judge Stipp, erred by (1) determining that the decision of Judge Borbely, the original trial judge in the temporary relief hearing, was *res judicata*, and (2) refusing to allow evidence at the October 1995 hearing that was or could have been introduced at the April-May 1995 temporary relief hearing. We agree.

■ Initially, we address Richard's argument that because Crystal failed to make an offer of proof, she waived for review her contentions that the trial court erred by excluding the testimony of (1) Patricia Kaine (Richard's former co-worker) and (2) M.F.'s counselor, Kathryn McGee. We agree that Crystal failed to make an adequate offer of proof regarding Kaine's testimony. Accordingly, because the nature of that evidence is not obvious, we hold that Crystal has waived that particular contention of error. See *Holder v. Caselton*, 275 Ill. App. 3d 950, 955, 657 N.E.2d 680, 685 (1995).

■ However, we do not agree that Crystal waived her contention of error regarding McGee's testimony. A formal offer of proof is not required when the circumstances and the question itself sufficiently indicate the purpose and substance of the evidence sought, and when the question is in proper form and clearly admits of a favorable answer. *In re A.M.*, 274 Ill. App. 3d 702, 709, 653 N.E.2d 1294, 1299 (1995). In addition, a statement by counsel may be sufficient, particularly where there is no statement by the court, opposing counsel, or any witness disputing counsel's statement. *A.M.*, 274 Ill. App. 3d at 709, 653 N.E.2d at 1299. During her opening statement, Crystal's trial counsel set forth, *with particularity*, both the purpose and substance of McGee's testimony; counsel's statements were undisputed. Further, the questions asked of McGee sufficiently indicate the purpose and substance of the evidence sought through her testimony. The better practice would have been for Crystal's trial counsel either to explicitly make a formal offer of proof or to inform the court that she wished to make representations in lieu of that formal offer. Had Crystal's counsel done so, then the court or Richard could state any objection they might have to proceeding upon representations alone. Nonetheless, on this record we conclude that Crystal's failure to make a formal offer of proof did not result in waiver.

■ In addition, Crystal contends that the trial court erred during the final hearing when it excluded other evidence that Crystal had introduced or could have introduced at the temporary relief hearing—namely, Crystal's testimony regarding M.F.'s behaviors, Richard's testimony regarding his loss of two jobs for sexually harassing female co-workers, Dr. Stephens' evidence deposition, and prior testimony of DCFS investigator Jacques regarding an indicated finding that Richard abused M.F. The nature and purpose of this excluded evidence are obvious on this record. Thus, formal offers of proof were not necessary to preserve this issue for review before this court. See *Smith v. Black & Decker U.S., Inc.*, 272 Ill. App. 3d 451, 458, 650 N.E.2d 1108, 1114 (1995).

■ Section 603(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that "[a] party to a custody proceeding *** may move for a temporary custody order." 750 ILCS 5/603(a) (West 1994). The trial court may award temporary custody under the best-interest-of-the-child standard set forth in section 602 of the Act (750 ILCS 5/602 (West 1994)) after a hearing or based solely on affidavits (if the parties do not object). 750 ILCS 5/603(a) (West 1994). Although section 603 refers only to "a custody proceeding," visitation is a form of custody (*In re Marriage of Allen*, 265 Ill. App. 3d 208, 213, 638 N.E.2d 340, 344 (1994)) and is subject to the custody rules as set forth in the Act (*In re Custody of Myer*, 100 Ill. App. 3d 27, 32, 426 N.E.2d 333, 336 (1981)).

A temporary order—by its very nature—is *provisional* in character and continues only during the pendency of the action. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 91, 581 N.E.2d 716, 718 (1991). When the matter that is the subject of the temporary order comes before the court for a hearing on the merits, the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order. *Simmons*, 221 Ill. App. 3d at 91, 581 N.E.2d at 719. Once the trial court enters the final order, an assumption arises that the court has thereby adjusted for any inequity in its temporary orders. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 827, 633 N.E.2d 82, 92 (1994).

■ The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996). Because a temporary visitation order is not a final judgment on the merits, such an order cannot be regarded as *res judicata* of the issues raised by the parties. *Smith v. Smith*, 36 Ill. App. 2d 55, 60, 183 N.E.2d 559, 561 (1962). Further, this court has

also urged trial courts to use caution in applying the doctrine of *res judicata* to permanent child custody orders (to the extent any custody order is ever permanent), as follows:

"Generally, a court's order regarding child custody is *res judicata* as to facts which existed at the time the order was entered. New conditions must establish a change in custody is warranted \*\*\*. [Citation.] Courts should be cautious in determining when to apply *res judicata* in child custody cases. This doctrine should not be strictly applied to bar evidence when the most important consideration is the welfare of a child." *In re Marriage of Weaver*, 228 Ill. App. 3d 609, 616, 592 N.E.2d 643, 648 (1992).

■ Because a *temporary* visitation order means just that—particularly when a different judge presides at the hearing on the merits, which will result in a permanent or final order—we hold that a trial court must conduct a hearing regarding permanent custody or visitation *de novo*. During the final hearing, the trial court should consider *all* factors that relate to the best interests of the children. See 750 ILCS 5/607 (West 1994).

We find support for our holding in the long-standing principle that a party is entitled to a resolution of factual questions by a trier of fact who has been afforded a full opportunity to assess the credibility of witnesses by observing their demeanor. See *In re Marriage of Sorenson*, 127 Ill. App. 3d 967, 969, 469 N.E.2d 440, 442 (1984). In child custody cases, courts have relied on this principle to hold that even when the parties stipulate that a successor judge may resolve factual questions by reviewing the record of prior proceedings, a new trial may still be warranted where critical determinations necessarily hinge upon the credibility of one witness over another. *Sorenson*, 127 Ill. App. 3d at 969, 469 N.E.2d at 442; see also *In re Marriage of Akins*, 188 Ill. App. 3d 951, 953, 544 N.E.2d 1131, 1132 (1989).

■ In addition, we note that neither section 606 of the Act (which governs hearings related to permanent custody and visitation) (750 ILCS 5/606 (West 1994)) nor section 607 of the Act (which governs visitation privileges) (750 ILCS 5/607 (West 1994)) contains any language limiting the introduction of evidence, unlike section 610(b) of the Act, which provides that the trial court—when considering a petition to modify a custody order—is limited to "[t]he facts that have arisen since the prior judgment or that were unknown to the court" at the time of the prior judgment (750 ILCS 5/610(b) (West 1994)). Instead, section 606 of the Act specifically provides that "[p]*revious* statements made by [a] child relating to *any* allegations that the child is an abused or neglected child" are admissible in a custody or visitation hearing. (Emphasis added.) 750 ILCS 5/606(e) (West 1994).

■ In the present case, Judge Borbely, the original judge, entered the temporary visitation order pursuant to an agreement reached by Crystal and Richard after three days of testimony at the temporary relief hearing. In approving the agreement, the trial court specifically noted that the parties' attorneys had informed it of additional evidence they would have presented had the hearing continued. That statement shows the court understood the *temporary* nature of the order it was entering. *Levy v. Skilling*, 136 Ill. App. 3d 727, 729, 483 N.E.2d 917, 919 (1985) (determination of whether an order is temporary or final is governed by the order's substance). Prior to hearing any evidence at the October 1995 final hearing, Judge Stipp, the successor trial judge, ruled that he would not allow evidence that was or could have been introduced at the April-May 1995 temporary relief hearing, as follows:

> "Before proceeding to hear evidence, the court does wish to remind both counsel and state for the record that the court takes notice of the order for temporary relief entered by Judge Borbely on May 26th, 1995.

> \* \* \*

> Specifically, the court notes Paragraph 3 of the order which is quoted as follows: 'That the allegation of the petitioner that [Richard] has been guilty of sexual abuse with regard to said children has not been established by the evidence.' Further, the court notes that that order did, in fact, grant reasonable visitation to [Richard] with provisions \*\*\* primarily providing for specific times and periods of visitation and with some supervision details specified in connection with the visitation arrangements.

> \* \* \*

> Furthermore, the court is of the belief that on this particular issue, having been once litigated, the court is bound to follow the findings by Judge Borbely. The court will be open and receptive to any and all evidence accruing from and after May 26th[, 1995]; \*\*\*. But the court does not intend to address and listen a second time to identical evidence previously presented in connection with the original orders for temporary relief."

After Crystal objected, the court stated the following:

> "I do note the order entered was a temporary order. This is a final hearing. I give high credence and value to the finding made by Judge Borbely, and it is my intention to examine the issue of restrictions on visitation based upon new evidence arising from and after May 26th[, 1995]."

On this record, we conclude that Judge Stipp, the successor trial judge, erred by determining that he was bound by the findings of

Judge Borbely, the original judge, made during the temporary relief hearing. Thus, we hold that Judge Stipp erred by excluding evidence that was or could have been presented at the temporary relief hearing. Accordingly, we reverse and remand for a *de novo* hearing on the issue of visitation.

In so concluding, we note that when parents are going through a divorce, it is imperative that their minor children have some order and stability in their lives pending the final resolution of issues. The overriding concern in custody and visitation disputes is determining what will best serve the interests of the children. Section 603 of the Act was implemented to (1) encourage informal and agreed determinations of temporary custody and visitation, (2) accelerate the process of awarding temporary custody and visitation through the use of affidavits, and (3) minimize disruptions in children's lives by providing stability in their living environment and relationships with their parents as quickly as possible. See Ill. Ann. Stat., ch. 40, par. 603, Historical & Practice Notes, at 53 (Smith-Hurd 1980). If the findings at a temporary hearing were binding at the final hearing, the purposes of section 603 of the Act would be defeated and the best interests of the children would not be served. Parties would no longer be willing to have the trial court enter a temporary order based solely on affidavits or on evidence adduced during truncated hearings. Parties would be forced either to forego temporary relief altogether or fully litigate their cases during the temporary relief hearing when otherwise they would not have chosen to do so.

### III. PROPERTY AND DEBT DISTRIBUTION

The material in this section is not to be published pursuant to Supreme Court Rule 23. Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

### IV. ISSUES ON REMAND

Although we have determined that this case must be remanded for a *de novo* hearing on the issue of visitation, Crystal raises other issues that will likely arise on remand. We address these issues separately.

### A. Burden of Proof in a Visitation Proceeding

■ Crystal argues that the trial court erred by placing the burden on her to show that supervised visitation should be continued as provided by the temporary order. We disagree.

Section 607 of the Act governs a parent's visitation rights. Section 607(a) of the Act entitles a parent who was not granted custody of his child to reasonable visitation rights unless the court finds that

visitation would seriously endanger the child's physical, mental, moral, or emotional health. 750 ILCS 5/607(a) (West 1994). The custodial parent carries the burden of proving by a preponderance of the evidence that visitation with the noncustodial parent would seriously endanger the child. *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 957, 623 N.E.2d 780, 785 (1993).

In the present case, Crystal petitioned for temporary custody, which the trial court granted. Prior to the October 1995 final hearing, the parties stipulated that Crystal would have sole custody of M.F. and A.F. Thus, the trial court did not err by placing on Crystal, as the custodial parent, the burden of proving that visitation with Richard would seriously endanger their children.

### B. Testimony of McGee as an Expert Witness

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### C. Billing Records

■ Crystal next argues that the trial court erred by excluding billing records of the counseling center. We agree.

Supreme Court Rule 236 provides an exception to the hearsay rule for records of regularly conducted activities of any business. 145 Ill. 2d R. 236. A party may establish a foundation for admitting business records through testimony of the records custodian or of another person familiar with the business and its mode of operation. *Department of Corrections ex rel. People v. Adams*, 278 Ill. App. 3d 803, 811, 663 N.E.2d 1145, 1151 (1996).

In the present case, the trial court refused to admit the billing records, stating that "[t]o the extent *** they're prepared by others, they're not admissible under the business records exception." Accordingly, the trial court erred by excluding the center's billing records.

### D. Standard for Entering a Visitation Order

■ Crystal next argues that the trial court erroneously applied the "serious endangerment" standard in deciding that Richard should not be ordered to participate in counseling. We agree.

Section 607 of the Act governs a parent's visitation rights. Section 607(a) of the Act provides that "[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." 750 ILCS 5/607(a) (West 1994). A restriction on a noncustodial parent's visitation rights is inappropriate absent a finding of serious endangerment. See *In re Marriage of Lee*, 246 Ill. App. 3d 628, 645, 615 N.E.2d 1314, 1326 (1993).

However, not every condition that a trial court may place upon a noncustodial parent is a "restriction." A restriction of visitation is an action that limits, restrains, or confines visitation within bounds. *Lee*, 246 Ill. App. 3d at 645, 615 N.E.2d at 1326. A termination of visitation is a restriction, as is a prohibition on overnight visitation. Likewise, a requirement that visitation be supervised, occur in the home of the custodial parent, or outside the home of the noncustodial parent is a restriction.

We conclude that requiring a noncustodial parent to participate in counseling is not a "restriction" on visitation. A counseling requirement in no way limits, restrains, or confines visitation within bounds. Instead, participation in counseling is more "in the nature of an accommodation" (emphasis omitted) by a noncustodial parent to best serve the interests of the child. See *In re Marriage of Tisckos/Stewart*, 161 Ill. App. 3d 302, 311, 514 N.E.2d 523, 529 (1987). Because counseling is not a restriction, a trial court should apply the best-interest-of-the-child standard in determining whether to order a noncustodial parent to participate in counseling. *In re Marriage of Dobey*, 258 Ill. App. 3d 874, 877, 629 N.E.2d 812, 815 (1994) (trial court has broad discretion in determining visitation rights of the noncustodial parent, with the best interest of the child being the main concern).

In its December 1995 order, the trial court explicitly revealed that it used the "serious endangerment" standard when it wrote the following:

"[T]he Court *** hereby finds as follows:

1. That [Richard] should have reasonable visitation with both of the said minor children of the parties, without restrictions or conditions, and with no requirements of counseling, because the evidence presented to the Court does not establish that such visitation would seriously endanger the child's physical, mental, moral[,] or emotional health ***."

We hold that the trial court erred by applying the "serious endangerment" standard in determining that Richard need not participate in counseling, and on remand, the trial court should apply the best-interest-of-the-child standard in making that determination.

## V. CONCLUSION

For the reasons stated, we affirm all portions of the judgment except with regard to the visitation order. We reverse and remand

for a *de novo* hearing on the issue of visitation consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded with directions.

GREEN and KNECHT, JJ., concur.