12/12/97 No. 
4-97-0680

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

IN RE THE MARRIAGE OF: ) Appeal from 

JAYSON E. RUDD, ) Circuit Court of 

Petitioner-Appellee, ) Tazewell County

and ) No. 96D714

STACEY R. RUDD, ) 

Respondent-Appellant. )

) Honorable

) Jerelyn D. Maher,

) Judge Presid­ing.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

In May 1997, the trial court of Tazewell County, as part of a dissolution judgment, grant­ed petitioner unsu­per­vised visi­ta­tion with his three-year-old daugh­ter, Brittinee.  In ren­dering its decision, the trial court de­nied respondent's re­quest that petitioner's visita­tion rights be ter­mi­nated or re­stricted be­cause of petitioner's alleged sexu­al abuse of the parties' then four-year-old niece, G.T.  Re­spo­ndent ap­peals, argu­ing the trial court erred (1) in applying sec­tion 606(e) of the Illi­nois Mar­riage and Dis­solution of Mar­riage Act (Act)(750 ILCS 5/606(e)
 (West 1996)) to bar testi­mony of cer­tain hear­say state­ments made by G.T., or, al­ter­na­tive­ly, (2) by not con­duct­ing a hear­ing to determine the reli­ability of G.T.'s state­ments as re­quired under sec­tion 8-2601(a) of the Code of Civil Pro­cedure (Code)(735 ILCS 5/8-2601(a) (West 1996)).  For the fol­lowing reasons, we reverse and remand for further proceed­ings.

I.  BACKGROUND

The parties married in June 1994 and separated in April 1996.  They agreed re­spondent­ would main­tain cus­tody of Brittinee, who was born in August 1994, and further agreed petit­ioner would be al­lowed reasonable visi­ta­tion with her.  After the parties' separation, petitioner visit­ed Brittinee on several occasions.  

In October 1996, petitioner was alleged to have sexual­ly molested his niece, G.T.  As a result of the alle­ga­tions, re­spon­dent has re­fused peti­tion­er ac­cess to Brittinee.  The re­cord does not indi­cate whether peti­tion­er was ever charged with sexu­al­ly abus­ing G.T. or wheth­er any adju­di­cation or find­ing of guilt has been made on such a claim.  

In May 1997, the trial court en­tered a judg­ment dis­solv­ing the marriage of the parties and con­ducted a hear­ing on the issue of petitioner's visitation rights.  Re­spo­ndent re­quest­ed the trial court either deny or restrict petitioner's visi­ta­tion of Brittinee in light of his al­leged sex­u­al mis­con­duct.  At the hearing, respondent sought to in­tro­duce the tes­ti­mo­ny of Josh Hendrix, a child pro­tection in­ves­tiga­tor with the Depart­ment of Children and Family Services (DCFS).  Hendrix was the DCFS repre­sentative who was in charge of investi­gating the claims of sexual abuse against G.T.

Hendrix was initially questioned about his qualifica­tions and DCFS investigative procedures.  Hendrix then was asked about an in­ter­view he conducted with G.T.  At this time, petitioner's coun­sel ob­ject­ed, argu­ing any tes­ti­mony as to state­ments made by G.T. was inadmis­sible hear­say.  Respondent's coun­sel rec­ognized Hendrix's testi­mony as hear­say but contended it none­the­less was admissible as an ex­cep­tion to the hear­say rule under section 606(e) of the Act or, alterna­tive­ly, under section 8-2601(a) of the Code.  Section 606 of the Act governs hearings concerning cus­tody and visitation rights and provides, in rele­vant part:

"Previous statements made by 
the child relat­ing to any allegations that 
the child is an abused or neglected child within the mean­ing of the Abused and Neglected Child Report­ing Act [(325 ILCS 5/1 
et
 
seq
. (West 1996))], or an abused or neglected minor within the mean­ing of the Juve­nile Court Act of 1987 [(705 ILCS 405/1-1 
et
 
seq
. (West 1996))], shall be ad­mis­si­ble in evi­dence in a hearing con­cern­ing cus­tody of or visitation with 
the child.  No such state­ment, however, if uncor­roborated and not subject to cross-examina­tion, shall be suffi­cient in itself to sup­port a finding of abuse or neglect."
  750 ILCS 5/606(e) (West 1996).

Similarly, section 8-2601(a) of the Code states:

"An out-of-court statement made by a child under the age of 13 describing any act of child abuse or any conduct involving an un­lawful sexual act performed in the presence of, with, by, or on the declarant child, or testimony by such of an out-of-court state­ment made by such child that he or she com­plained of such acts to another, is admissi­ble in any civil proceeding, if: (1) the court conducts a hearing outside the presence of the jury and finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (2) the child either: (i) testifies at the pro­ceeding; or (ii) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the state­ment."  735 ILCS 5/8-2601(a) (West 1996).  

After considering the parties' argu­ments, the trial court de­ter­mined neither section 606(e) of the Act nor section 8-2601(a) of the Code pro­vides a basis for allowing Hendrix to tes­tify about G.T.'s state­ments of abuse made during the course of the inter­view.  The trial court de­ter­mined sec­tion 606(e) does not cover state­ments made by a child whose visi­tation is not at is­sue.  Be­cause the visi­tation of Brittinee, and not G.T., was at issue in the un­derlying hear­ing, the trial court rea­soned sec­tion 606(e) of the Act does not apply to allow Hendrix's testimo­ny.

The trial court found section 8-2601(a) inap­pli­ca­ble because any testimony by Hendrix concerning G.T.'s state­ments would be unreliable and, as such, would be inadmissible hearsay.  The trial court specifi­cal­ly stat­ed:

"So what [respondent is] attempting to do is to bring in hearsay statements.  You're not bringing in findings or convic­tions of proven allegations of sexual abuse of the father with another child. ***  [W]e have to stop at some point with just total hearsay.

And what you're doing now is you're bringing in the hearsay statement of [G.T.] concerning actions with [G.T.]  This isn't [G.T.] coming in and giving statements ***.

That's the distinction here ***.  And we have to have some stopping point.  We have to have some ability to cross-examine these hearsay statements.

***

I do not think that [section] 8-2601 [of the Code] is ap­pli­cable here under the sce­nario that's been pre­sent­ed to me.  I think what you're at­tempt­ing to do goes be­yond any safe­guards of reli­ability, and I'm not going to allow it.  So that's my ruling."

After further argument by the parties' attorneys, the trial court reaf­firmed its position, stat­ing:

"My ruling is that I still don't see how [sec­tion] 8-2601 [ap­plies], that an out-of-court state­ment made by a child, not a party to this divorce in and of itself, is going to be sufficient *** because it's totally hear­say *** unless you have some corroboration."

Now, if you bring the child in, then the hearsay objection is gone."

Contrary to the trial court's suggestion, respondent's coun­sel de­cid­ed not to elicit G.T.'s testimony.  In­stead, respondent's coun­sel made an offer of proof as to what would have been estab­lished by the tes­ti­mo­nies of Hendrix and addition­al witnesses other than G.T.  The trial court ulti­mate­ly de­termined that peti­tioner did not pose a significant threat to Brittinee and, ac­cord­ing­ly, award­ed him rea­son­able and unsu­per­vised visi­ta­tion rights.

On May 29, 1997, respondent filed a motion re­quest­ing the trial court to reconsider its deci­sion or, in the alterna­tive, to stay the ef­fect of that deci­sion pend­ing her ap­peal.  On August 4, 1997, the trial court denied respondent's mo­tion to reconsider and, additionally, denied her re­quest to stay the visita­tion order.  Re­spo­ndent timely filed her no­tice of appeal the follow­ing day.

II.  ANALYSIS

On appeal, respondent argues the trial court erred in concluding neither section 606(e) nor section 8-2601 allows the introduction of Hendrix's testimony.  The ad­mis­si­bil­i­ty of evi­dence lies with­in the sound dis­cre­tion of the trial court, and a re­viewing court will not re­verse the trial court's decision ab­sent a clear abuse of dis­cre­tion.  
Hold­er v. Caselton
, 275 Ill. App. 3d 950, 958, 657 N.E.2d 680, 687 (1995).

A.  Section 606(e) of the Act

Respondent initally contends the trial court miscon­strued the scope of sec­tion 606(e).  According to respondent, section 606(e) ap­plies to state­ments of any child and, therefore, the trial court erred in rul­ing that this section ap­plied only to state­ments made by Brittinee and not G.T.  Petit­ioner, on the other hand, ar­gues that, because G.T. is not "the child" as that phrase is used in sec­tion 606(e), any state­ments made by her con­cern­ing the pur­ported sexu­al misconduct by petit­ioner are out­side the purview of that provision's hear­say excep­tion.

Upon review of the specific language of the Act, we conclude the trial court did not abuse its discre­tion in lim­iting testimony under section 606(e) to statements made only by Brittinee.  The hear­say ex­cep­tion found in sec­tion 606(e) is part of the Act's provisions governing child custody and visita­tion matters and states, in pertinent part, "[p]re­vi­ous state­ments made by 
the
 
child
 re­lat­ing to any allega­tions [of abuse] *** shall be admis­sible in evidence in a hearing con­cern­ing cus­tody of or visita­tion with 
the
 
child
."  (Emphasis added.) 750 ILCS 5/606(e) (West 1996).  A basic prin­ci­ple of stat­u­to­ry con­struc­tion is to ef­fec­tu­ate the intent of the legis­la­ture.  
Ruva v. Mente
, 143 Ill. 2d 257, 263, 572 N.E.2d 888, 891 (1991).  In de­termining the legisla­ture's in­tent, the court must look to the specific wording of the stat­ute and eval­uate the wording in its en­tire­ty, con­sid­ering each sec­tion in connec­tion with other sec­tions.  
Bonaguro v. Coun­ty Offi­cers Elec­tor­al Board
, 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714 (1994).  When the in­tent can be as­cer­tained from the plain lan­guage of the statute, that in­tent must prevail.  
DiFoggio v. Retirement Board of the County Employ­ees Annuity & Benefit Fund
, 156 Ill. 2d 377, 382, 620 N.E.2d 1070, 1073 (1993), quoting 
Illinois Power Co. v. Mahin
, 72 Ill. 2d 189, 194, 381 N.E.2d 222, 224 (1978).  The lan­guage of sub­sec­tion (e) ex­plic­it­ly re­fers to state­ments made by 
the
 
child
 who is the sub­ject of the cus­to­dy or visitation pro­ceed­ings.  The spe­cific word­ing of this pro­vi­sion does not sup­port a find­ing that this hearsay ex­ception en­compass­es state­ments made by a child who is a third party to those pro­ceed­ings.  More­over, in con­stru­ing sec­tion 606 as a whole, we find that the leg­is­la­ture clearly in­tend­ed this section's pro­visions apply only to the child whose custo­dy or visitation is at issue.  We, there­fore, find no error in the trial court's ruling that Hendrix's tes­timo­ny con­cerning state­ments of abuse described by G.T. is not al­lowed under 606(e). 

According to respondent, this court in 
In re Marriage of Fields
, 283 Ill. App. 3d 894, 671 N.E.2d 85 (1996), read sub­section (e) to cover state­ments of abuse made by any child irre­spective of whether the child is the sub­ject of the custody or visitation proceedings.  In support of her position, re­spo­ndent spe­cifically cites this court's state­ment that "sec­tion 606 of the Act spe­cifi­cally pro­vides that '
[p]revious
 state­ments made by [a] child relating to 
any
 allega­tions that the child is an abused or ne­glected child' are admis­sible in a custo­dy or visita­tion hearing."  (Em­pha­sis in orig­inal.) 
Fields
, 283 Ill. App. 3d at 902, 671 N.E.2d at 91, quoting 750 ILCS 5/606(e) (West 1994).  Re­spo­ndent urges that this court's sub­sti­tu­tion of the term "a" for the term "the" indicates the court in­terpret­ed sub­section (e) to cover state­ments of any child.  Re­spondent asserts G.T. was "a" child who made pre­vi­ous state­ments re­lating to allega­tions of abuse and, thus, argues Hendrix's testimony is admissi­ble under subsec­tion (e).

Re­spo­ndent's reliance 
on 
Fields
 is misplaced.  In 
Fields
, this court construed section 606 
to sup­port its holding on what type of hearing should be conducted following a temporary visitation order and not, as re­spon­dent con­tends, to de­ter­mine whose state­ments are cov­ered by that section's hear­say ex­cep­tion.  See 
Fields
, 283 Ill. App. 3d at 901-04, 671 N.E.2d at 89-92.  We note that, in con­stru­ing and ap­ply­ing a statute's pro­vi­sions, the specific lan­guage of the stat­ute, and not judi­cial substitu­tions thereof, controls the court's analy­sis.  The sub­stitution of the statutory term "the" with "a" was mere­ly a con­ve­nient way for the court to clar­i­fy its posi­tion and in no way suggests the inter­pretation urged by re­spondent.

B.  Section 8-2601 of the Code

In the alternative, respondent argues the trial court erred in applying section 8-2601(a).  Re­spo­ndent asserts that she had a right under subsection (a) to demon­strate that petitioner's visi­tation would expose Brittinee to an inju­ri­ous envi­ronment and spe­cif­i­cal­ly as­serts error in the trial court's fail­ure to con­duct a reli­abil­ity hear­ing before bar­ring Hendrix's testimo­ny.  Conversely, peti­tioner contends the trial court prop­erly de­ter­mined that G.T.'s state­ments were unreliable.

Section 8-2601 contemplates the issue of sexual mis­conduct against a child may be relevant in a civil proceed­ing and is the civil counterpart to sec­tion 115-10 of the Code of Crim­i­nal Procedure of 1963 (Criminal Code)(725 ILCS 5/115-10 (West 1996)).  Both sections contain essentially identical provisions and allow a party to in­tro­duce into evi­dence a child's hear­say state­ments de­tailing in­stances of abuse.  Be­fore such evi­dence is admis­si­ble under either section, howev­er, two pro­ce­dural con­di­tions must be sat­is­fied.  First, the court must con­duct a hear­ing to de­ter­mine wheth­er the "time, content, and cir­cum­stances of the state­ment provide suffi­cient safeguards of reli­ability."  735 ILCS 5/8-2601(a)(1) (West 1996); 725 ILCS 5/115-10(b)(1) (West 1996).  Sec­ond, the state­ments must be cor­robo­rated ei­ther by the testi­mony of the declar­ant child or, if the child is unavail­able, other evi­dence of the act which is the subject of the statements.  735 ILCS 5/8-2601(a)(2)(West 1996); 725 ILCS 5/115-10(b)(2) (West 1996).  Because the focus here is wheth­er the trial court made the re­quired determi­nation in find­ing G.T.'s statements unreli­able, the corrobo­ration prong need not be addressed.

Research has disclosed no case law discussing subsec­tion (a)(1) of the Code.   None­the­less, we believe the spe­cif­ic lan­guage of sec­tion 8-2601(a), as well as case law ap­plying sec­tion 115-10 of the Criminal Code, pro­vides ade­quate guid­ance for our anal­y­sis.

The Code mandates that, before a child's hear­say state­ment is admissible under section 8-2601(a), the court must con­duct a hear­ing to de­ter­mine whether the proffered state­ment is reli­able.  735 ILCS 5/8-2601(a)(1) (West 1996).  The pro­po­nent has the bur­den of producing evi­dence suf­fi­cient to dem­on­strate the state­ments pos­sess­ a par­tic­u­lar guar­an­tee of trust­wor­thi­ness.  See 
People v. Coleman
, 205 Ill. App. 3d 567, 583, 563 N.E.2d 1010, 1020 (1990) (because the section 115-10 hearsay exception is not a firmly rooted hear­say excep­tion, "the state­ment must show a particular guarantee of trust­worthiness to be admissi­ble").  In determining reliability, the court must focus on the time, con­tent and cir­cum­stances that surround the making of the state­ment.  735 ILCS 5/8-2601 (West 1996); 
see 
Peo­ple v. Barger
, 251 Ill. App. 3d 448, 462, 624 N.E.2d 405, 414 (1993) ("when eval­uat­ing the fa­cial reli­abil­ity of the hear­say state­ments" under sec­tion 115-10, the court should "sole­ly eval­u­ate the cir­cum­stances when the child-declar­ant made the state­ments").  Thus, the re­quired deter­mina­tion of reliabili­ty can be made only after evi­dence concern­ing the cir­cumstances surrounding the mak­ing of the prof­fered state­ment has been pre­sent­ed and con­sid­ered by the court.

In the present case, the trial court de­ter­mined reli­abil­i­ty with­out examining any evidence relevant to the compe­tency of G.T.'s state­ments.  The re­cord indi­cates the trial court, in declaring G.T.'s state­ments unre­liable, did not consider any evi­dence con­cern­ing the time, con­tent or cir­cum­stanc­es of those state­ments.  In fact, the trial court could not con­ceiv­ably have con­sid­ered such evi­dence be­cause no evidence con­cerning G.T.'s de­scriptions of abuse was ever present­ed at the visi­ta­tion pro­ceed­ing.  The record suggests that the trial court made its de­ter­mi­na­tion of reli­abili­ty sole­ly on the basis of who was tes­ti­fy­ing about G.T.'s state­ments.  Ac­cord­ing to the trial court, any tes­ti­mony by Hendrix, and pre­sumably by any other individual, con­cern­ing G.T.'s de­scrip­tions of abuse would be "to­tal­ly hear­say," and, as such, could not be introduced under section 8-2601(a).  By basing its determination on who was testi­fying, rather than on the time, content and circumstances of the prof­fered state­ments, the trial court erroneously concluded G.T.'s state­ments were unreli­able.

Although the trial court correctly recognized Hendrix's tes­ti­mo­ny would be hear­say, the trial court misunder­stood the ap­pli­ca­bili­ty of section 8-2601(a).  The trial court ex­plained the hearsay problem created by Hendrix's testimony could be over­come only by hav­ing G.T. tes­ti­fy at the pro­ceeding.  Section 8-2601(a) does not limit whose tes­ti­mo­ny may be pre­sent­ed at the reli­abil­ity stage and ex­plic­it­ly allows an individ­ual to tes­tify about state­ments made by a child de­scribing in­stances of abuse provid­ed the state­ments dem­onstrate an indi­cia of reli­abil­ity and are substan­tiat­ed by ei­ther the testi­mony of the declar­ant child or other cor­robo­ra­tive evidence.  See 
735 ILCS 5/8-2601(a) (West 1996) (allowing "tes­ti­mony *** of an out-of-court state­ment [de­scribing abuse] made by [a] child that he or she com­plained of such acts to an­oth­er").  More­over, this court has in­ter­pret­ed a sub­stan­tial­ly similar provi­sion in sec­tion 115-10 to allow testi­mony of persons to whom the child com­plained.  
See 
Peo­ple v. Roy
, 201 Ill. App. 3d 166, 183, 558 N.E.2d 1208, 1220-21 (1990).  The trial court apparently was con­cerned about the petitioner's in­ability to cross-examine G.T. if Hendrix was allowed to testify.  How­ever, any con­cerns enter­tained by the trial court are ad­dressed by the reliabili­ty hear­ing itself.  Re­quir­ing the court to hear­ and con­sid­er­ evi­dence con­cerning the reliability of the child's state­ments ensures such evidence is competent, there­by com­pensat­ing for the party's in­ability to cross-exam­ine the de­clar­ant.  See 
Coleman
,
 205 Ill. App. 3d at 583-84, 563 N.E.2d at 1020 (
reli­abil­i­ty hear­ing under sec­tion 115-10 com­plies with the confrontation clause's re­quired show­ing of par­ticular guar­an­tees of trustwor­thiness
); 
Barger
, 251 Ill. App. 3d at 462, 624 N.E.2d at 413 (reli­abil­i­ty hear­ing under sec­tion 115-10 is re­quired be­cause "ad­mit­ting hear­say state­ments de­nies [a par­ty] the oppor­tunity to cross-examine the out-of-court de­clar­ant"); see also 
In re E.P.
, 167 Ill. App. 3d 534, 541, 521 N.E.2d 603, 608 (1988) (be­cause "'[s]tatements to be admitted pur­suant to a hearsay ex­cep­tion must possess the "indicia of reliability" and provide the "satisfactory basis for evaluat­ing the truth of the prior state­ment"'" the "'ac­tual treat­ment of hear­say in Illinois should rare­ly conflict with the con­frontation clause's search for trust­wor­thiness,'" quoting M. Gra­ham, Cleary & Graham's Handbook of Illi­nois Evidence §807.1, at 616-17 (4th ed. 1984)).
  The de­clar­ant child's tes­timo­ny is not re­quired to demonstrate reli­ability under sub­sec­tion (a)(1) and, contrary to the trial court's sug­gestion, Hendrix, as well as other individu­als, could properly testify about G.T.'s de­scriptions of abuse.

We disagree with the trial court to the extent it as­serts that, because the allegations of sexual abuse against G.T. had not been es­tab­lished prior to the un­derlying hear­ing, the prof­fered state­ments are not rele­vant to the issue of Brittinee's visita­tion.  Alle­ga­tions of abuse do not be­come ir­rel­evant in a visi­ta­tion pro­ceed­ing mere­ly be­cause a find­ing of guilt has not been en­tered against the ac­cused par­ty.  Clear­ly, a parent's al­leged sexu­al mis­con­duct to­ward a child, wheth­er or not his or her own, is rele­vant in de­ter­min­ing the visi­ta­tion rights of that par­ent, par­ticu­lar­ly when, as is the case here, the al­leged child-victim is a close family member and simi­lar in age to the child whose visi­tation is at issue.  If we adopted­ the trial court's posi­tion, a party to a visi­ta­tion pro­ceeding could not intro­duce evidence tending to show that the accused party sexual­ly abused a child unless the alleged abuse has been already es­tab­lished.  In other words, where no finding of guilt has been made, a court could never consider allegations of abuse in de­ter­mining the accused party's visi­ta­tion rights.  Requiring the court to essen­tially ig­nore alle­ga­tions of abuse would greatly enhance the risk of subjecting the child to a dan­gerous environ­ment.  We see no sound reason for precluding re­spondent from attempting to prove the allegations of abuse made against peti­tioner.

Upon re­view of the re­cord, we conclude the evidence presented at the underlying hearing does not pro­vide a suf­fi­cient basis from which the trial court could have reason­ably deter­mined the reli­ability of G.T.'s state­ments under sec­tion 8-2601(a) of the Code.  Therefore, we find the ex­clu­sion of Hendrix's tes­ti­mo­ny was an abuse of the trial court's dis­cre­tion.  The trial court should have re­served rul­ing on the hear­say ob­jec­tion of peti-tioner's counsel until it heard and consid­ered evi­dence re­lating to the reliabili­ty of G.T.'s state­ments.  Accord­ing­ly, we remand the matter with di­rec­tions that respon­dent be al­lowed to pres­ent evi­dence con­cern­ing the circum­stances sur­round­ing G.T.'s de­scrip­tions of sexual abuse.

III.  CONCLUSION

For the foregoing reasons, we reverse the trial court's visi­ta­tion order and re­mand for further proceedings.

Reversed and remanded with directions.

KNECHT and STEIGMANN, JJ., con­cur.