2026 IL App (2d) 250354-U
No. 2-25-0354
Order filed January 12, 2026

**NOTICE:** This order was filed under Supreme Court Change 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF L.H., <br> a Minor, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | Appeal from the Circuit Court <br> of Kane County. <br><br> No. 17-F-481 <br><br> Honorable |
| (Dan H., Petitioner-Appellee, v. <br> Jennifer B., Respondent-Appellant) | ) <br> ) | Bradley P. David, <br> Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court's judgment is affirmed where the November 12, 2024, emergency order was not void for lack of jurisdiction, the emergency proceedings complied with due process, and the court did not abuse its discretion in managing the case culminating in the July 24, 2025, final order limiting respondent's parenting time and awarding petitioner sole decision-making authority.

¶ 2   Respondent, Jennifer B., appeals the order of the circuit court of Kane County granting the motion filed by petitioner, Dan H., seeking to suspend her parenting time and for other relief with respect to their minor child, L.H.  We affirm.

¶ 3                              I. BACKGROUND

¶ 4    We fully recount the lengthy procedural history to contextualize the issues respondent raises on appeal.

¶ 5    In April 2016, the parties entered a dating relationship, and Jennifer moved into Dan's residence in October 2016. The parties had one child together, L.H., who was born in May 2017.

¶ 6    On August 21, 2017, Dan filed a petition to establish paternity and to allocate parenting time and parental responsibilities, seeking the sole allocation of parental responsibilities. That same day, he also filed a petition for injunctive relief seeking to bar Jennifer from removing L.H. from Kane County. Dan alleged that Jennifer had vacated his residence with L.H. without his knowledge, and he did not know their whereabouts.

¶ 7    On August 24, 2017, Jennifer petitioned the trial court for an *ex parte* emergency order of protection on behalf of herself and L.H. pursuant to the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2016)). The court denied her request for an emergency order but scheduled the matter for a plenary hearing on September 6, 2017.

¶ 8    At the plenary hearing, the parties entered an agreed order resolving both Dan's petition for injunctive relief and Jennifer's petition for an order of protection. Under their agreement, Jennifer was awarded possession of L.H., Dan's parenting time and child support obligations were established, and the parties were ordered to communicate only through "Talking Parents," a co-parenting communication tool.

¶ 9    On November 6, 2017, Jennifer filed a counter-petition for allocation of parental responsibilities seeking sole decision-making authority and the majority of parenting time.

¶ 10    On August 22, 2018, the parties entered an allocation judgment providing for shared parental responsibilities, including decision-making authority in the areas of education, religion,

extracurricular activities, and healthcare. The allocation judgment also awarded Jennifer the majority of parenting time and established a parenting plan granting Dan regular visitation.

¶ 11 Approximately one month later, on September 27, 2018, Jennifer filed a second *ex parte* petition for an emergency order of protection on behalf of herself and L.H. She alleged that on the day prior, L.H. returned from Dan's parenting time with recurring genital redness and pain and exhibited "highly sexualized behaviors" that were inconsistent with her age, prompting Jennifer to take L.H. to the hospital. She further alleged that Dan had refused to use the diaper rash cream she provided and instead used a different product. Jennifer also asserted that the nurse practitioner could not determine whether L.H.'s "highly sexualized behaviors" were caused by the diaper rash or some other source and advised her to contact the Illinois Department of Children and Family Services (DCFS). The court denied the emergency petition and scheduled the matter for a plenary hearing, but suspended Dan's parenting time "until [the] next court date." On October 2, 2018, after Jennifer testified and presented evidence at a plenary hearing, the court entered a directed finding in Dan's favor.

¶ 12 On January 3, 2019, Dan filed a petition for rule to show cause, alleging that Jennifer violated several provisions of the allocation judgment. He asserted that, between August and December 2018, Jennifer repeatedly took L.H. to various doctors and emergency rooms without notice to him or mutual agreement. He further alleged that these actions violated their agreement to keep the scheduled 15-month pediatric appointment and thereafter jointly select a new pediatrician based on his health insurance, that Jennifer refused to provide him with access to L.H.'s medical records, and that Jennifer failed to consult him when scheduling medical appointments. Jennifer thereafter filed a response to the petition, generally asserting that the various medical appointments and emergency room visits were at the direction of healthcare

providers and DCFS "to determine or rule out whether potential abuse had occurred." On March 29, 2019, the trial court appointed a guardian *ad litem* (GAL).

¶ 13 On May 24, 2019, after the GAL provided a preliminary report, the parties entered an agreed order amending certain aspects of the allocation judgment. Pertinently, the order modified the parties' responsibilities regarding L.H.'s medical care by designating Dr. Diane Nielsen as L.H.'s pediatrician and provided that the parties would consider Dr. Nielsen's recommendations regarding L.H.'s vaccination schedule. The parties further agreed that Dan would be responsible for scheduling L.H.'s routine medical appointments and would keep Jennifer informed of those appointments. The agreed order also required the parties to communicate via telephone regarding any emergency medical decision to take the child to a physician or hospital before traveling, including identifying the specific doctor or hospital involved. The GAL was subsequently discharged.

¶ 14 On July 27, 2021, Dan filed a motion to modify the allocation of parental decision-making responsibilities seeking sole decision-making authority. He alleged that, since the entry of the August 22, 2018, allocation judgment and the May 24, 2019, agreed order, circumstances had substantially changed in that Jennifer refused to co-parent or engage in joint decision-making, resulting in L.H. not receiving routine medical care or vaccinations, not being registered for school, and other decisions that Dan asserted were contrary to the child's best interests. He attributed Jennifer's "lack of co-parenting" to her "divergent views on medicine, education, extracurricular activities, and religion." The court subsequently reappointed the GAL and continued the matter.

¶ 15 On March 24, 2022, Dan filed a motion to modify the allocation of parenting time seeking the majority of parenting time and establishing a parenting schedule for Jennifer. He asserted that Jennifer had misused her majority parenting time and acted contrary to L.H.'s best interests by

refusing routine medical care and vaccinations, declining to enroll her in school, making repeated unfounded abuse allegations to law enforcement and DCFS, and subjecting L.H. to multiple medical examinations to support false allegations of abuse against Dan. Sometime thereafter, the matter was assigned to Judge Bradley David, who presided over the case for the remainder of the proceedings.

¶ 16    On September 20, 2022, Jennifer filed her third *ex parte* emergency petition for an order of protection, before a different judge. The emergency petition was denied and set for a plenary hearing on October 3, 2022.

¶ 17    On September 27, 2022, Dan filed an emergency motion to suspend Jennifer's parenting time. He alleged that Jennifer had recently engaged in unstable conduct that seriously endangered L.H.'s wellbeing, including falsely accusing Dan of allowing another five-year-old child to sexually abuse L.H. during his parenting time. Dan also alleged that Jennifer repeatedly and unilaterally took L.H. to urgent care facilities, emergency rooms, and medical appointments without notifying him in advance or providing records afterward, thereby subjecting L.H. to unwarranted medical examinations and interviews by law enforcement, DCFS, and the Kane County Child Advocacy Center (Advocacy Center). He further emphasized that the police had subsequently interviewed him and L.H. but took no further action, and that DCFS investigated the allegations and concluded they were unfounded.

¶ 18    The following day, on September 28, 2022, Jennifer filed an emergency motion to suspend Dan's parenting time and to compel counseling for L.H. As in her petition for an order of protection, Jennifer alleged that Dan had sexually abused L.H. on multiple occasions during his overnight parenting time and had instructed her not to tell anyone. Jennifer also asserted that L.H.'s pediatrician and DCFS both recommended that L.H. participate in counseling.

¶ 19    On October 4, 2022, the trial court entered an allocation judgment resolving all pending motions, including: (1) Dan's motion to modify the allocation of parenting time; (2) Dan's motion to modify parental decision-making responsibilities; (3) Jennifer's petition for an order of protection; and (4) Jennifer's emergency motion to suspend Dan's parenting time. Pertinently, the court amended the prior parenting orders by establishing an equal parenting-time schedule, maintaining joint decision-making authority, re-designating Dr. Nielsen as L.H.'s pediatrician, with mandatory adherence to her medical and vaccination recommendations. The order required Dan to schedule and transport L.H. to all medical and counseling appointments. Additionally, it permitted Jennifer to attend the appointments provided she was unaccompanied, allowed both parents to be present with L.H., and limited any information provided to the physician to matters relevant to the purpose of the visit or L.H.'s medical care. The order also provided that nothing therein would preclude either parent from taking L.H. to a *bona fide* emergency medical appointment, so long as the transporting party immediately provided notice to the other parent. In addition, the order required L.H. to attend public school in Dan's district and that the parties use his address for school-registration purposes. The GAL was subsequently discharged.

¶ 20    On December 14, 2022, Dan filed an emergency motion to suspend Jennifer's parenting time and to award him sole decision-making authority. He alleged that L.H. had attended several therapy sessions with her counselor in November 2022 and disclosed no sexual abuse, but that, on December 7, 2022, Jennifer brought L.H. to the counselor without notifying him, presented pictures drawn by L.H. purportedly depicting sexual abuse or otherwise raising concerns about L.H's safety, and accused Dan of sexual abuse. Dan further alleged that the counselor, as a mandated reporter, reported the allegations, but that DCFS and law enforcement declined to investigate, and that neither of those entities nor L.H.'s counselor found the allegations credible.

He further asserted that, on December 8, 2022, Jennifer, without first notifying Dan, contacted L.H.'s school and falsely accused the staff of permitting other students to kiss L.H., but that the school investigated the allegation and found it to be without merit. Dan asserted that Jennifer's repeated allegations had resulted in L.H. "being constantly prodded" and were intended to alienate L.H. from him. The court subsequently reappointed the GAL to investigate the new allegations.

¶ 21 After a hearing on December 22, 2022, the trial court found that Jennifer had "seriously endangered the child's mental, moral, and physical health," granted Dan sole decision-making authority, and limited Jennifer's parenting time to supervised, four-hour blocks on alternating weekends. The order further stated it was "permanent," subject to modification under section 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610.5 (West 2022)).

¶ 22 On January 20, 2023, Jennifer filed a motion for reconsideration and rehearing, asserting that the December 22, 2022, modification order was premature under the 30-day notice provision set forth in section 601.2(c) of the Act (750 ILCS 5/601.2(c) (West 2022)). On March 9, 2023, the trial court granted Jennifer's motion in part, vacating the "permanent nature" of the order, modifying it to be temporary and without prejudice to the parties, and scheduling a rehearing on Dan's emergency motion to suspend parenting time.

¶ 23 On July 3, 2023, the parties entered an agreed order amending the October 4, 2022, allocation judgment and reinstating Jennifer's parenting time. The order required the parties to first communicate in writing through Talking Parents before: (1) seeking to obtain care, counseling, or advice relating to L.H.'s medical, mental, emotional, psychological, sexual, or moral health; (2) contacting DCFS; (3) contacting law enforcement in the absence of an emergency; (4) or contacting L.H.'s school or extracurricular activity providers regarding the other

parent. The order further provided that, if the parties were unable to resolve the concerned parent's issue, they were required to attend mediation before taking any further action, including seeking relief through the court, DCFS, or law enforcement. The GAL was again discharged, and the order stated that it was a "final judgment."

¶ 24 On November 12, 2024, Jennifer filed an emergency petition for an order of protection in case No. 2024-OP-1747, seeking protection for herself and L.H. She alleged that, on November 8, 2024, she took L.H. to the emergency room at Advocate Lutheran General Hospital, where Dan "body slammed" her after hospital staff asked the parties to step out of the room. That morning, Judge Reginald Campbell, who was not presiding over the parentage case, granted Jennifer's emergency motion.

¶ 25 Later that afternoon, Dan filed an emergency motion to suspend Jennifer's parenting time, asserting that Jennifer's recent actions had caused L.H. to be admitted at Streamwood Behavioral Health Center (Health Center), a psychiatric facility. He asserted that Jennifer, without informing him, took L.H. to a pediatrician in Oak Brook and reported that L.H. was the victim of sexual abuse and had expressed suicidal and homicidal ideations. He further alleged that on November 8, 2024, Jennifer transported L.H. to a children's hospital in Park Ridge, where she repeated those allegations but refused any evidence collection related to the sexual abuse claims and misidentified L.H.'s pediatrician. He also emphasized that the hospital records described L.H.'s physical exam as "normal," contained no findings suggestive of inflicted injury or sexual assault, and stated that "Pt does not report anyone touching her in places they should not be." Dan also asserted that, because of Jennifer's actions, a new DCFS report was made, and reports were filed with the St. Charles and Park Ridge police departments. He further emphasized that Dr. Nielsen, L.H.'s pediatrician, submitted a note to the Health Center stating that she had no concerns regarding

L.H.'s mental health, that Jennifer was "well known to not tell accurate stories," and that L.H.'s admission to the Health Center was "very concerning."

¶ 26    That same day, November 12, 2024, the trial court entered a temporary order that granted Dan possession of L.H., awarded him sole decision-making authority, suspended Jennifer's parenting time, prohibited her from having any contact with L.H., directed Dan to retrieve L.H. from the Health Center and ensure that she was released only to him upon discharge, and ordered Dan to cooperate with DCFS and any other investigations.  The order provided that these provisions would remain in effect until further order of the court, and the GAL was re-appointed.

¶ 27    On November 13, 2024, in case No. 2024 OP 1747, Dan filed an emergency motion to rehear, vacate, or modify Jennifer's emergency order of protection before Judge Campbell, asserting that the Health Center would not release L.H. to him because of that order. Judge Campbell granted the motion, vacated the emergency order of protection entered the prior day, and transferred the matter to Judge David for setting of a plenary hearing.

¶ 28    On December 12, 2024, Jennifer voluntarily withdrew her petition for an order of protection.  Additionally, the GAL provided an oral report to the court, and the matter was continued to allow the GAL to complete further investigation.

¶ 29    On January 16, 2025, the trial court entered an order setting trial to commence on July 22, 2025.  The order granted Jennifer 28 days to respond to Dan's motion, set deadlines for the completion of written and oral discovery, required the parties to disclose witnesses by April 17, 2025, and directed them to submit trial witness lists and copies of any exhibits they intended to introduce at trial no later than June 20, 2025, the final trial status date. The order further provided that noncompliance with the deadlines could result in the barring of any undisclosed exhibit or witnesses from testifying at trial.

¶ 30    On March 6, 2025, Jennifer filed a motion to reinstate her parenting time, emphasizing that she had not had any contact with L.H. for nearly four months and contending that reinstatement of parenting time, to the extent deemed appropriate by the court, would serve L.H.'s best interests. Four days later, on March 10, 2025, Jennifer filed a motion requesting that both parties and L.H. undergo professional evaluations and asking the court to appoint her preferred professional to conduct an evaluation under section 604.10(c) of the Act (750 ILCS 5/604.10 (West 2024)).  She noted that the GAL had recently issued a report recommending that she participate in a mental health evaluation and contended that evaluations of Dan and L.H. were also necessary to assist the court in making informed decisions regarding parenting time and decision-making authority.

¶ 31    On March 13, 2025, the trial court granted Dan time to respond to Jennifer's motion to reinstate parenting time and to appoint an evaluator under section 604.10(c), as well as scheduled the latter motion for summary hearing.

¶ 32    On April 22, 2025, the trial court denied Jennifer's motion to appoint an evaluator and set her motion to reinstate parenting time for summary hearing on May 8, 2025, at 2:00 p.m. In denying her motion, the court found that the request to appoint an evaluator was untimely because trial was approximately 90 days away, Jennifer had delayed filing the motion for nearly two months after the trial date was set and agreed to, and the court did not believe an evaluation could be completed in time.  The court further found that such an evaluation would not be in L.H.'s best interests because she had recently undergone a full psychological evaluation at the Health Center and had been repeatedly "poked and prodded" throughout the case.  The court granted Jennifer a 14-day extension to disclose her witnesses pursuant to the January 16, 2025, order, and granted her 21 days to respond to Dan's motion to suspend her parenting time.

¶ 33    On May 7, 2025, Jennifer's counsel filed an emergency motion to withdraw, citing a "significant breakdown in communication and the attorney-client relationship."  Counsel initially noticed the motion for presentment that same day at 2:00 p.m., but later that day filed an amended emergency notice scheduling the matter for the following day, May 8, 2025, at 9:30 a.m.

¶ 34    On May 8, 2025, at 9:23 a.m., Jennifer, *pro se*, filed an emergency motion seeking multiple forms of relief, including: (1) the immediate recusal of Judge David; (2) the appointment of a "trauma-informed, ADA-compliant substitute counsel to restore due process;" (3) a stay of all proceedings pending protection of her rights under the Americans with Disabilities Act (ADA); and (4) acknowledgment of and oversight concerning alleged judicial bias, GAL misconduct, and suppression of abuse disclosures.  She noticed the motion for presentment for 2:00 p.m. that same day; the same time her motion to reinstate parenting time was scheduled for summary hearing pursuant to the April 22, 2025, order.

¶ 35    Also on same day, May 8, 2025, at 9:30 a.m., the parties' counsel and Dan appeared in court, but Jennifer did not. The court entered an order granting Jennifer's counsel leave to withdraw, granted Jennifer 21 days to file a supplemental appearance, and struck the 2:00 p.m. hearing scheduled for later that day.  The record shows that Jennifer later appeared in court at 2:00 p.m.  The court explained what had transpired that morning and stated that, at the time it struck the 2:00 p.m. hearing, it was unaware that Jennifer intended to present her motion at that time and no one present at 9:30 a.m. believed it necessary to appear at 2:00 p.m.  The court continued her motion to June 5, 2025, at 9:30 a.m., and the order stated that Jennifer need not provide further notice.

¶ 36     On June 2, 2025, Dan's counsel appeared and informed the court that he was unavailable for June 5, 2025, court date. The order stated that the date would stand, and it set a status date for June 6, 2025.

¶ 37     On June 3, 2025, Jennifer filed an emergency motion to continue the June 5, 2025, hearing "until a written ADA determination is issued by the ADA Coordinator and implemented," as well as seeking to strike the June 6, 2025, status date "as procedurally invalid and improperly set during pending ADA review."

¶ 38     On June 5, 2025, the trial court entered an order continuing Jennifer's *pro se* motion for various relief to June 6, 2025, due to the unavailability of Dan's counsel.

¶ 39     The next day, on June 6, the trial court granted Dan 14 days to respond to Jennifer's *pro se* motion and scheduled hearing on the matter, as well reiterated that the final trial conference was set for June 20, 2025.

¶ 40     On June 10, 2025, Jennifer filed a *pro se* motion seeking various forms of relief, including (1) vacating "all custody, visitation, and procedural orders entered prior to May 7, 2025, including the November 12, 2024, No Contact Order, for due process and evidentiary violations"; (2) vacating all orders issued after May 7, 2025, as void for lack of jurisdiction due to pending judicial disqualification; (3) a stay of enforcement of all orders entered after November 12, 2024, "pending full resolution of the [instant] motion by a neutral judicial authority"; (4) a declaration that any rulings issued by a disqualified judge are null and void; (5) written confirmation that all court dates or orders entered since May 7, 2025, "are suspended for lack of jurisdiction"; (6) clarification that neither party nor the GAL could seek judicial relief or submit filings "until neutral oversight is secured and jurisdiction is restored"; and (7) barring "any further assignments for evidentiary review" during the pendency of the asserted judicial freeze.

¶ 41    On June 20, 2025, at the final trial conference, the trial court denied Jennifer's *pro se* filings submitted on May 8, 2025, and June 10, 2025.  The court first addressed Jennifer's May 8, 2025, filing and construed it as a petition for substitution of judge for cause under section 2-1001(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1001(a)(3) (West 2024)).  Applying that standard, and relying on *In re Estate of Wilson*, 238 Ill. 2d 519 (2010), the court denied the petition without referring it to another judge, explaining that reassignment was not required because the petition failed to meet the threshold requirement of alleging grounds that, if true, would justify granting substitution for cause.  The court further explained that Jennifer's allegations of bias were based entirely on the court's rulings and conduct during the proceedings, rather than any extrajudicial source, and therefore did not warrant substitution for cause.  The court then denied Jennifer's remaining *pro se* motions, explaining that those filings sought relief premised on the case being reassigned to another judge or the court's prior orders being void, and that such relief necessarily failed in light of the denial of Jennifer's petition for substitution of judge for cause.

¶ 42    The court then turned to the issue of exhibit and witness list disclosure as required by the January 16, 2025, order.  Dan tendered a flash drive containing the exhibits he intended to introduce at trial, along with his trial witness list.  Jennifer did not tender any exhibits or a witness list, explaining that her prior counsel "failed to file a witness list by the deadline" and had also not filed a response to Dan's November 12, 2024, emergency motion to suspend parenting time. Jennifer requested additional time to complete those filings, but the court denied the request, emphasizing that the trial order had been in place since January and finding that Jennifer had failed to tender any exhibits by the deadline as required by the January 16, 2025, order.

¶ 43    On July 7, 2025, Jennifer filed an emergency motion to continue trial, seeking to strike the trial dates of July 22 through July 24, 2025, set the matter for immediate hearing, and obtain a 90-

day continuance to "allow time for case preparation, including written discovery, witness disclosure, witness coordination, oral discovery, and preparation of a numerical list of exhibits." She also attached as an exhibit her preliminary witness disclosure and a draft response to Dan's emergency motion to suspend parenting time.

¶ 44 Three days later, on July 10, 2025, Jennifer filed an emergency motion to vacate the June 20, 2025, order as void, transfer her motion for substitution of judge for cause to a neutral judge, and obtain *nunc pro tunc* relief to file her response to Dan's November 12, 2024, emergency motion and her preliminary witness disclosures and exhibits.

¶ 45 On July 14, 2025, the trial court denied both of Jennifer's emergency motions. In so ruling, it commented that it had already addressed and rejected the same arguments raised in Jennifer's motion to vacate the June 20, 2025, order during the June 20 hearing. Additionally, the court denied Jennifer's emergency motion to continue trial, finding that she had ample opportunity to prepare for trial, which had been scheduled since January, that the trial dates were set by agreement of counsel, and that the case required proceeding to trial to provide finality for the sake of L.H. The following day, Dan filed a motion *in limine* seeking to bar Jennifer from presenting any witnesses or exhibits at trial based on her noncompliance with the deadlines set forth in the January 16, 2025, order.

¶ 46 On July 21, 2025, Jennifer filed a "notice of constitutional standing, special appearance, and demand for strict scrutiny," as well as an objection to Dan's motion in limine.

¶ 47 The trial court conducted a trial on Dan's emergency motion to suspend Jennifer's parenting time on July 22 and 23, 2025. At the outset of trial, the court granted Dan's motion *in limine*, ruling that the limitation would apply reciprocally and would preclude both parties from presenting any witnesses or tendering any exhibits that were not disclosed by the June 20, 2025,

deadline. At trial, both the GAL and Dan testified. Jennifer extensively cross-examined both witnesses but declined to testify herself.

¶ 48 On July 24, 2025, the trial court entered a written order granting Dan's emergency motion to suspend Jennifer's parenting time. Specifically, the court: (1) awarded Dan sole decision-making authority; (2) prohibited Jennifer from attending L.H.'s medical appointments, extracurricular activities, school activities, or any other event customarily attended by parents; (3) enjoined Jennifer from accessing L.H.'s medical or school records; and (4) limited Jennifer's parenting time to electronic contact with L.H. on Wednesdays and Sundays at 7:00 p.m., with each contact not to exceed ten minutes. The order further provided that, as a prerequisite to seeking modification, Jennifer must undergo a psychological evaluation with a provider on the "approved Kane County List" and provide the evaluator with copies of the GAL's reports and the trial transcripts.

¶ 49 Jennifer timely filed a notice of appeal.

¶ 50                                    II. ANALYSIS

¶ 51 As a preliminary matter, Dan filed a motion to dismiss the appeal on October 6, 2025, arguing that Jennifer's notice of appeal was untimely as to the trial court's November 12, 2024, emergency order. He emphasizes that Jennifer's notice of appeal identified only the November 12, 2024, temporary order and "[a]ll subsequent orders predicated upon it, including the order of July 24, 2025." He also asserts that neither order identified in the notice of appeal expressly states that it is final and appealable, rendering the appeal time-barred. We ordered the motion taken with the case and now deny it.

¶ 52 Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) provides that every final judgment in a civil case is appealable as of right, is initiated by filing a notice of appeal, and that "[n]o other

step is jurisdictional." An order is final if it disposes of the rights of the parties and resolves the merits of the litigation such that there is nothing left to do but execute the judgment. *Martinez v. Leon*, 2024 IL App (1st) 231058, ¶ 15. Here, Jennifer filed her notice of appeal on August 14, 2025, within 30 days of the July 24, 2025, order specified in the notice. Contrary to Dan's argument, the July 24, 2025, order plainly is final and appealable. It was entered following a two-day trial, awarded Dan sole decision-making authority, imposed significant limits on Jennifer's contact with L.H., discharged the GAL, and required Jennifer to undergo a psychological evaluation as a prerequisite to seeking any modification of the order. The record does not suggest that further proceedings are contemplated. That the order is not expressly labeled "final" is of no consequence, because finality turns on substance and effect rather than form. *Clemons v. Mechanical Devices Co*., 202 Ill. 2d 344, 350 (2002). "An appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment." *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009). Stated differently, an appeal from a final judgment encompasses review not only of the final judgment but also any interlocutory orders that constituted procedural steps in the progression leading to it. *Id*. Because the July 24, 2025, order is final, the propriety of the November 12, 2024, interlocutory order is properly before us.

¶ 53 We likewise deny Dan's request to strike Jennifer's brief for her alleged noncompliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which governs the form and contents of an appellant's brief. Although Dan correctly notes that Jennifer's argument section contains only a single citation to the record, and although we agree that the arguments presented lack cohesion and clarity, we are mindful that striking a party's brief, either in whole or in part, is a harsh sanction reserved for violations so substantial that they hinder our ability to conduct meaningful review. *Burrell v. Village of Sauk Village*, 2017 Ill. App (1st) 163392, ¶ 14. Here, we

have the benefit of a cogent appellee's brief, and we can discern the nature of Jennifer's arguments sufficiently to address the merits. Accordingly, we decline to strike Jennifer's brief.

¶ 54    We now turn to the merits. Jennifer purports to raise nine separate issues on appeal, one of which is further divided into ten subparts. Many of these issues, however, overlap and raise a small number of recurring legal theories. Other purported issues are not presented coherently, fail to cite relevant or controlling authority, or both. Properly distilled, the appeal presents three core issues: (1) whether the trial court's November 12, 2024, order granting Dan's emergency motion to suspend parenting time is void for lack of jurisdiction; (2) whether the court's handling of the emergency proceedings in November 2024 violated due process; and (3) whether the trial court abused its discretion in managing the proceedings, including rulings on continuances, disclosures, and related matters. We address these issues in turn.

¶ 55    Jennifer first argues that the November 12, 2024, order granting Dan's emergency motion to suspend her parenting time and prohibiting contact with L.H. was void *ab initio*, which she describes as "the threshold and dispositive question in this appeal." She asserts that the trial court lacked subject matter jurisdiction and personal jurisdiction when it entered the order because it was issued on an emergency, *ex parte* basis with limited notice and without sworn testimony or express findings of harm, neglect, or unfitness. According to Jennifer, these alleged defects deprived the court of jurisdiction, rendering the order a legal nullity from its inception. She further contends that, because that order is void, all subsequent court proceedings and orders that relied upon it, including the July 24, 2025, order entered after trial, are likewise void as "derivative nullities," which is a concept she analogizes to the criminal-law "fruit of the poisonous tree" doctrine.

¶ 56    Jennifer's argument fails because it conflates alleged procedural irregularities with jurisdictional defects. The alleged deficiencies she identifies, including limited notice, the *ex parte* nature of the proceeding, and the absence of sworn testimony or express findings of unfitness, do not implicate either subject matter jurisdiction or personal jurisdiction. Subject-matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc., v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Except for the circuit court's power to review administrative actions, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution, which extends to "all 'justiciable matters.' " *Id*. at 334 (quoting Ill. Const. 1970, art. VI, § 9). Accordingly, to invoke the circuit court's subject matter jurisdiction, a party need only present a justiciable matter, namely "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id*. at 335. "So long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of [the Illinois supreme] court, the circuit court has subject matter jurisdiction to consider it." *McCormick v. Robertson*, 2015 IL 118230, ¶ 20.

¶ 57    Here, the circuit court plainly possessed subject matter jurisdiction. This case involved a parentage action and the allocation and modification of parental responsibilities, which are matters squarely within the general class of cases over which the circuit court has constitutional authority. See *id*. ¶ 28 (holding that questions of custody "clearly present[] a justiciable matter" and therefore fall within the subject matter jurisdiction of the circuit court). Additionally, the parties' dispute presented an actual, ongoing controversy regarding L.H.'s care, custody, and best interests,

rendering it justiciable. No serious argument can be made that the circuit court lacked subject matter jurisdiction.

¶ 58 The same is true of Jennifer's related assertion that the circuit court lacked personal jurisdiction. Personal jurisdiction "refers to [the] power of a court to bind the parties to its judgments." *First National Bank of Chicago v. Boelcskevy*, 126 Ill. App. 3d 271, 276 (1984). It may be established "either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction." *Nationstar Mortgage LLC v. Benavides*, 2020 IL App (2d) 190681, ¶ 11. The record establishes that Jennifer voluntarily submitted herself to the circuit court's jurisdiction. She filed a full appearance through retained counsel in October 2017 and a counter-petition for allocation of parental responsibilities in November 2017, thereby seeking affirmative relief in the court. By doing so, she made a general appearance and waived any objection to personal jurisdiction. She also filed *pro se* appearances in December 2022 and May 2025 and actively participated in the proceedings, both before and after entry of the November 12, 2024, order, thereby further confirming the court's personal jurisdiction over her.

¶ 59 Because the circuit court possessed both subject matter jurisdiction over the controversy and personal jurisdiction over Jennifer, any alleged deficiencies in notice, procedure, and evidentiary support did not render the November 12, 2024, order, or any subsequent orders, void. "Once a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law." *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). See also *McCormick*, 2015 IL 118230, ¶ 28 ("[o]nce a court has subject matter jurisdiction over a matter, its judgment will not be rendered void, nor will it lose jurisdiction merely because of an error or impropriety in its determination of the facts or

application of the law"). At most, the alleged deficiencies Jennifer raises in her brief would render the challenged orders voidable. However, Jennifer does not frame her argument as one of voidable error but asserts that the orders were void *ab initio* and without legal effect. To the extent that Jennifer perhaps could have, but did not, argue that these orders were voidable rather than void, any such argument is forfeited. See Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited"). Accordingly, Jennifer's claim that the November 12, 2024, order and all subsequent orders are void *ab initio* is without merit.

¶ 60     Jennifer next argues that the trial court's handling of the November 2024 emergency proceedings violated her fundamental rights to family integrity, procedural due process, and equal protection of the law. In support, she contends that the November 12, 2024, order granting Dan's emergency motion to suspend parenting time was entered *ex parte* on only 49 minutes' notice by email, which she asserts made attendance impossible. She further contends that the order was entered without an evidentiary hearing or admissible evidence and notwithstanding the entry of an emergency order of protection earlier that same day in case No. 2024-OP-1747. Jennifer asks that we "vacate the November 12, 2024[,] order in its entirety as it is the only proper remedy, [and] declare all subsequent orders void as a matter of law." In a related argument, she asserts that the court erred in granting Dan's November 13, 2024, emergency motion to rehear, vacate, or modify the emergency order of protection she had obtained the previous day in case No. 2024-OP-1747.

¶ 61     We need not address Jennifer's statutory or constitutional challenges to the November 12, 2024, order. Dan's emergency motion to suspend parenting time was brought pursuant to section 603.5 of the Act (750 ILCS 5/603.5 (West 2024)), which addresses the entry of temporary orders allocating parental responsibilities, and section 603.10 of the Act (*id.* §603.10), which requires the trial court, after a hearing, to enter any order necessary to protect the child upon a finding that a

parent engaged in conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development. Jennifer complains throughout her appellate brief that she was denied the opportunity to appear, object, present evidence, or cross-examine witnesses at the November 12, 2024, emergency hearing.

¶ 62　Jennifer's argument overlooks that the November 12, 2024, order was temporary in nature, as confirmed by both its express terms and the court's subsequent actions. The order repeatedly stated that it would remain in effect only "until further court order," including the provisions suspending Jennifer's parenting time, prohibiting contact with L.H., and awarding Dan sole decision-making authority. It also reappointed the GAL and scheduled a future status date for the court to receive the GAL's report, underscoring that the relief was interim and subject to further proceedings. "A temporary order—by its very nature—is *provisional* in character and continues only during the pendency of the action." (Emphasis in original). *In re Marriage of Fields*, 283 Ill. App. 3d 894, 901 (1996). After a full hearing on the merits, "the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order." *Id.* "Once the trial court enters the final order, an assumption arises that the court has thereby adjusted for any inequity in its temporary orders." *Id.*

¶ 63　Following entry of the November 12, 2024, order, the trial court scheduled trial to commence on July 22, 2025, granted Jennifer time to respond to the motion, required the parties to disclose witnesses by a date certain, and set deadlines for the completion of written and oral discovery. At the ensuing trial, Jennifer represented herself *pro se* and was afforded the opportunity to appear, make objections, and cross-examine witnesses, but was barred from presenting exhibits or calling witnesses due to her failure to comply with the court's disclosure deadlines. Following trial, the November 12, 2024, order was superseded by the July 24, 2025,

final order, which now governs the parties' rights. Indeed, the July 24, 2025, order expressly reflects that it was entered after a full hearing on Dan's November 12, 2024, motion, with notice having been given and the Court having subject matter jurisdiction and personal jurisdiction over the parties. "An issue is moot where an actual controversy no longer exists between the parties or where events have occurred that make it impossible for the court to grant effective relief." *Prospect Heights Fire Protection District v. Department of Employment Security*, 2021 IL App (1st) 182525, ¶ 23. Because the November 12, 2024, order was temporary and has been superseded by a final order entered after a full trial, vacating it would afford Jennifer no effective relief. Accordingly, we need not address her challenges to that order.

¶ 64   Jennifer's related challenge to the trial court's November 13, 2024, vacating her emergency order of protection by Judge Campbell fails for similar reasons. As noted, Dan filed an emergency motion to rehear, vacate, or modify the emergency order of protection Jennifer had obtained the previous day in case No. 2024-OP-1747 after the Health Center declined to release L.H. to him based on that order—notwithstanding the November 12, 2024, order authorizing Dan to retrieve L.H. upon discharge and temporarily awarding him sole decision-making authority and possession of L.H. Judge Campbell granted Dan's motion, vacated the emergency order of protection, and transferred the matter to Judge David to schedule a plenary hearing. Jennifer asks on appeal that we "reinstate" the emergency order of protection "as the last valid and lawfully entered protective order rendered under proper due process and evidentiary procedure."

¶ 65   We conclude that Jennifer's challenge to the trial court's order vacating her emergency order of protection is moot. "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party."

*In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). "Where the issues involved in the trial court no longer exist, an appellate court will not review the cause merely to decide moot or abstract questions, to determine costs, or to establish a precedent." *In re Estate of Wellman*, 174 Ill. 2d 335, 353 (1996).

¶ 66    Jennifer voluntarily withdrew her petition for an order of protection on December 12, 2024. As a result, no order of protection remains in effect, and Jennifer abandoned her request for a plenary order of protection, thereby waiving appellate review of any challenges related to the emergency order. See *Pinske v. Allstate Property and Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶ 18 (observing that "waiver" is the voluntary relinquishment of a known right, whereas "forfeiture" is the failure to timely assert that right). To the extent that Jennifer suggests that her attorney withdrew her petition for an order of protection without her knowledge or consent, that claim is unsupported by the record and does not alter our analysis. The December 12, 2024, order expressly states that "Jennifer's Petn for OP is voluntarily withdrawn," and Jennifer did not move in the trial court to vacate or otherwise challenge her counsel's authority to withdraw it. We therefore cannot consider it on appeal. Because there is no operative order and no further relief this court could grant, Jennifer's challenge to the vacatur of the emergency order of protection affords no basis for appellate relief and is therefore moot.

¶ 67    Jennifer's final argument on appeal is that the trial court abused its discretion in managing the proceedings, including rulings on continuances, disclosures, substitution of judge for cause, and other related matters. She also asserts that the court conducted multiple "secret" proceedings in chambers with counsel and the GAL, which she characterizes as a due process violation. These arguments misunderstand routine trial-court administration. Illinois courts have broad, inherent discretion to manage their dockets, independent of any rule or statute. *Panos Trading LLC v. Forrer*, 2023 IL App (1st) 220451, ¶ 38. "The circuit court has the discretion to manage its docket

to ensure that there is no undue delay in the resolution of the proceedings before it." *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 24. The proceedings she identifies, including those on December 12, 2024, and March 13, 2025, were not conducted in "secret," but were routine pretrial or status conferences at which she was represented by counsel. Jennifer was not excluded from these discussions because, at each, her interests were represented by her chosen counsel, who actively participated in those proceedings. Due process does not require a party's personal presence at every pretrial conference, nor does it prohibit the court from conferring with counsel in chambers off the record to manage the case efficiently. More importantly, no substantive issue was resolved during these proceedings, as none resulted in the adjudication of parenting time, decision-making authority, or any pending motion. Jennifer also did not object to these proceedings or seek any timely relief in the trial court, and she fails to identify any prejudice arising from them. Therefore, any claim of error fails.

¶ 68    Jennifer's claim that the circuit court conducted improper proceedings on May 8, 2025, mischaracterizes the record. When Jennifer failed to appear at the properly noticed 9:30 a.m. hearing on her counsel's motion to withdraw, the court addressed only that motion and struck the previously scheduled 2:00 p.m. hearing. When Jennifer appeared later that afternoon, the court explained what had transpired that morning and continued her *pro se* motion to a later date, expressly relieving her of any further notice obligation. No substantive rulings were entered in her absence, and any alleged notice confusion was cured the same day. Moreover, Jennifer neither objected nor sought to vacate the order granting her attorney leave to withdraw.

¶ 69    Jennifer also asserts that the trial court erred in denying her July 7, 2025, emergency motion to continue trial on July 14, 2025, because she was "abandoned" by her counsel and thus deprived of due process and the right to be heard. Her argument plainly fails. It is well established that a

litigant has no absolute right to a continuance, but rather, the decision to grant or deny a continuance is within the sound discretion of the trial court. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996). Where, as here, the case has reached the trial stage of proceedings, a party seeking a continuance must provide the court with "especially grave reasons for a continuance" due to the potential inconvenience to the witnesses, the parties, and the court. *Id*. at 430-31. In assessing a request for a continuance, a key consideration is whether the party seeking it has exercised due diligence in proceeding with the case. *In re Marriage of Chesrow*, 255 Ill. App. 3d 613, 618 (1994).

¶ 70    The record amply supports the trial court's determination that Jennifer failed to exercise due diligence. Trial dates were set on January 16, 2025, which is more than six months before the scheduled start of trial on July 22, 2025. The scheduling order also set deadlines for the completion of discovery, required the parties to disclose witnesses and exchange trial witnesses lists by dates certain, and set a final trial status date of June 20, 2025. Jennifer was represented by counsel when those deadlines were set, as well as on the original deadline for witness disclosure, April 17, 2025, as well as through April 22, 2025, when the trial court granted Jennifer a 14-day extension to disclose her witnesses. Even with that extension, Jennifer failed to adhere to the scheduling order, and her counsel moved to withdraw on May 7, 2025, just after the extended witness and exhibit disclosure deadline had passed.

¶ 71    Despite this history, Jennifer did not seek a continuance when her counsel withdrew, nor did she seek any kind of relief from the January scheduling order. Instead, she pursued a series of *pro se* motions seeking collateral and extraordinary relief, including: (1) substitution of judge for cause; (2) a stay of all proceedings pending alleged protection of her rights under the ADA; (3) a formal acknowledgment of judicial bias and GAL misconduct; (4) the striking of various scheduled

dates as "procedurally invalid;" and (5) the vacatur of all custody, visitation, and procedural orders entered before May 7, 2025, because of "due process and evidentiary violations," as well as all orders entered after May 8, 2025, on the basis that the unresolved "pending judicial disqualification" deprived the trial court of jurisdiction. At no point during this period did Jennifer request additional time to comply with the court's disclosure deadlines or otherwise indicate that she was unable to prepare for trial under the existing schedule.

¶ 72    At the June 20, 2025, final trial conference, Jennifer conceded that she had not tendered a witness list or any exhibits that she wished to introduce during her case-in-chief, as required by the January 16, 2025, order. Only after Dan tendered his trial witness list and provided a flash drive containing his exhibits did Jennifer, for the first time, orally request additional time to prepare her own witness list and exhibits. The trial court denied the request, noting that the disclosure deadlines and trial dates had long been in place.

¶ 73    That denial formed the backdrop of Jennifer's July 7, 2025, emergency motion to continue trial, where she sought "time for case preparation, including written discovery, witness disclosure, witness coordination, oral discovery, and preparation of a numerical lists of exhibits." By that point, Jennifer had represented herself *pro se* for two months, and trial was to commence in just 15 days. The trial court denied the motion on July 14, 2025, noting that it had already rejected similar arguments at the final trial conference, that Jennifer had agreed to the trial dates and corresponding deadlines when the scheduling order was entered in January, and that her failure to timely prepare for trial was the result of her own choices rather than any defect in the proceedings. Based on the above, the trial court did not abuse its discretion in denying Jennifer's emergency motion to continue trial.

¶ 74    Finally, Jennifer contends that the trial court abused its discretion in denying the portion of her June 10, 2025, filings that sought to disqualify Judge David from presiding over the matter for cause.  Relying on section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 2024)), she asserts that her petition for substitution of judge for cause was required to be transferred to a different judge for ruling, and that Judge David erred by denying the request himself.  Just as in her other arguments, Jennifer contends that this purported error rendered the June 20, 2025, order and all subsequent orders void *ab initio*.

¶ 75    Jennifer's argument fails because it misapprehends the governing statute.  Although section 2-1001(a)(3)(iii) contemplates that a petition for substitution of judge for cause will be heard by a judge other than the judge named in the petition, referral to another judge for ruling on the petition is not automatic.  *Wilson*, 238 Ill. 2d at 553.  Rather, a judge may deny the petition without referring it to another judge if the petition fails to meet the statute's threshold procedural and substantive requirements, meaning the petition "must allege grounds that, if true, would justify granting substitution for cause." *Id*. at 567.  Pertinently, the court may deny the petition if it was not timely filed, the movant failed to include an affidavit, or the alleged bias does not stem from an extrajudicial source.  *Petalino v. Williams*, 2016 IL App (1st) 151861, ¶ 35 (citing *Wilson*, 238 Ill. 2d at 553).

¶ 76    Jennifer's request for substitution of judge for cause was premised entirely on Judge David's rulings and conduct within the proceedings, rather than from an extrajudicial source. Jennifer neither argues otherwise nor discusses section 2-1001(a)(3) of the Code as construed in *Wilson*.  Moreover, as the trial court correctly observed, Jennifer's petition failed to comply with the statutory requirement that a request for substitution of judge for cause be supported by affidavit. Because adverse rulings "almost never" constitute a valid basis for a claim of judicial bias (*Wilson*,

238 Ill. 2d at 554), and because Jennifer failed to satisfy the threshold procedural requirements of the statute, the trial court acted within its discretion in denying the petition without referring it to a different judge.

¶ 77                                III. CONCLUSION

¶ 78     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 79     Affirmed.